Wesolowski et al., Appellants, *v.* John Hancock Mutual Life Ins. Co.

Argued April 27, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis M. McAdams,* with him *Thomas Cogan,* for appellants.—The evidence of Adams agency and his negligence in performing his duty was for the jury: Holzheimer v. Lit, 262 Pa. 150; Nydes v. Royal Neighbors, 256 Pa. 381.

The oral evidence was for the jury: Scheer v. Melville, 279 Pa. 401; Eckert v. Shipbuilding Co., 280 Pa. 340; Petruska v. Motor Car Co., 83 Pa. Superior Ct. 112; Laubach v. Colley, 283 Pa. 366; Prezel v. Spencer, 99 Pa. Superior Ct. 404; Zondler v. Mfg. & Supply Co., 277 Pa. 98.

The master is answerable under the doctrine respondeat superior: Rosen v. Diesinger, 306 Pa. 13; Petruska v. Motor Car Co., 83 Pa. Superior Ct. 112; Griffith v. Simrell & Son, 304 Pa. 165; Burns v. Flaherty Co., 278 Pa. 579; McCaffrey v. Lukens, 67 Pa. Superior Ct. 231; Schofield v. Director General of Railroads, 276 Pa. 508; Prezel v. Spencer, 99 Pa. Superior Ct. 404; Lang v. Hanlon, 305 Pa. 378; Zondler v. Mfg. & Supply Co., 277 Pa. 98.

*Francis Shunk Brown,* with him *Ira Jewell Williams, Jr., Charles McVeigh Willits* and *Ira Jewell Williams,* for appellee.—The doctrine of respondeat superior does not apply: Guille v. Campbell, 200 Pa. 119; Erie v. Caulkins, 85 Pa. 247.

OPINION BY MR. JUSTICE MAXEY, May 26, 1932:

The John Hancock Mutual Life Insurance Company employed Charles J. Adams to solicit life insurance business and to make weekly collections of premiums. His salary was $15 per week plus commissions on new business. His territory was less than a square mile in the City of Philadelphia. The company had the right to Adams's exclusive services and to fix his working hours. In covering his territory, Adams sometimes walked and sometimes drove his own Ford car which he maintained and operated at his own expense. The company did not require him to use a car, though the company's superintendent, when informed that Adams had a car, said, "If you have one, you might as well use it."

On March 12, 1927, Adams was on his way in his car to make collections for the company. While on Hunting Park Avenue, he passed a car ahead of him and in doing so and while on the left side of the street, his automobile collided with a bicycle on which John Wesolowski, the minor plaintiff, then 15 years old, was riding. As a result of the collision, the youth sustained serious and permanent injuries. Suit was brought. At the trial the issues were Adams's negligence, the youth's contributory negligence and whether or not the defendant was, under the facts of the case, legally responsible for the negligence of Adams, if it was in fact found that the latter was negligent. Verdicts of $21,000 and $1,600 were returned in favor of the minor plaintiff and his parents respectively. Defendant filed a motion for judgment n. o. v. contending (1) that the doctrine of respondeat superior was inapplicable in this case, and (2) that the case disclosed such obvious contributory negligence on the part of the minor plaintiff as to entitle the defendant to have the court so to hold as a matter of law. The court below while holding—and correctly so—that the question of contributory negligence was for the jury, upheld the first contention and entered judgment for de-

fendant n. o. v. This is the only phase of the case that requires discussion.

The respective counsel agree that no other case has reached the appellate courts of this State with facts so nearly similar to the facts of the case now before us as to make any former decision of these courts of controlling force on this record. The precise point at issue under the facts at hand has not been settled by judicial decision in Pennsylvania, except as it was settled by the court below which held that "in the absence of any control of the operation of the automobile by Adams, the defendant cannot be held liable for his negligence in that operation." The court said: "While the general rule of law is that a principal is liable for the negligence of his agent while in the performance of the agent's duty, and the reason for the application of this rule is that the agent, during the performance of his duty, is presumably under the direction and control of the employer, where, as here, the instrumentality used by the agent or employee is not furnished at the direction of the employer, or subject to the employer's direction or control, the employer should not be held responsible."

We affirm the decision and adopt the ruling of the court below. To hold a master legally responsible for the act of a servant who is engaged in furthering his master's business and who while doing so negligently uses some instrumentality that carries him from place to place, it must either be proved that the master exercises actual or potential control over that instrumentality, or the use of the instrumentality at the time and place of the act complained of must be of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may reasonably be inferred. The application of this principle may be illustrated by two examples. If a city milk dealer sends his agents or servants into the surrounding country with trucks to gather up milk, the use of these trucks for this purpose is so vitally neces-

sary to the furtherance of the master's business that the master's control over the operation of these trucks may be reasonably inferred. In such a case the servant and the truck really constitute one instrumentality under the master's control. Each is an essential part of the whole instrumentality engaged in furthering the master's business. This is especially obvious if the master owns and maintains the truck and provides fuel for its operation. On the other hand, if a city news dealer engages boys to deliver newspapers about the city and these boys provide themselves with bicycles or motorcycles to facilitate their movements in delivering newspapers, it would be manifestly unreasonable to hold the news dealer responsible for injuries to others resulting from the negligent operation of the bicycles or motorcycles. The test of the master's responsibility in all of these cases is authority to control the servant's use of the instrumentality with which the injury is inflicted. We said in Rodgers v. Saxton, 305 Pa. 479: "Responsibility is commensurate with authority. Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it." In the case before us the defendant had no control over Adams's car. It was in no position to require him to use it, for the use of his car was no part of his contract of service. It could not direct him when, where or how to drive his car. It had no more control of Adams's car in which he transported himself than it had of the shoes he used in walking from patron to patron. The employer was indifferent as to whether Adams walked, rode a bicycle, or operated a motor car to reach the people with whom he transacted business. If Adams had chosen to walk from person to person with whom he had his employer's business to transact and in walking he had negligently knocked over and injured another pedestrian, it could not reasonably be contended that his employer should respond in damages for Adams's negli-

gent pedestrianism. So to hold would be to construe the phrase "respondeat superior" beyond its fundamental meaning and to carry its principle to absurd lengths and to consequences forbidden by every sound consideration of public policy.

Appellant also contends that the averment in the second paragraph of the statement of claim that Adams, "the said servant, agent or employee of defendant, at the time of the occurrence hereinafter more fully set forth, was operating said automobile in and about the course of his duties as a servant, agent or employee of defendant" "not having been properly denied," and the proper portions of the pleadings to show this averment and lack of proper denial being offered in evidence by the plaintiff, the court below erred in sustaining defendant's objection to this offer. Without deciding whether or not the purported denial in the affidavit of defense was inadequate in substance and form under the Practice Act, we hold that paragraph two of the statement of claim, even if uncontradicted, would not be relevant to the vital issue trying. Even accepting as a fact that Adams was the agent and servant of defendant at the time of the occurrence complained of and that he was operating the automobile in and about the course of his duties as servant and agent of the defendant, this does not determine the controversy. As we have already pointed out, the plaintiff must go further and aver and prove that the automobile was under the defendant's actual or potential control at the time and place in question or that the use of the automobile by the agent and servant was of such vital importance in furthering the business of the master that the latter's actual or potential control of it was a legitimate inference. Plaintiff's proof fell short of this requirement.

The judgment is affirmed.