## METROPOLITAN LIFE INS. CO. v. GOSNEY et al. *

### No. 11249.

Circuit Court of Appeals, Eighth Circuit.

Jan. 31, 1939

Clay C. Rogers, of Kansas City, Mo. (O. C. Mosman, C. Jasper Bell, and Paul A. Buzard, all of Kansas City, Mo., on the brief), for appellant.

Ira B. Burns, of Kansas City, Mo., for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

Russell Gosney and Harry Benson, plaintiffs in the court below, were on the evening of September 21, 1935, in Kansas City, Missouri, riding in a Ford V–8 coach belonging to and being driven by C. F. Kelly, an agent of the Metropolitan Life Insurance Company, when Kelly had an

*Rehearing denied Feb. 22, 1939.

accident which resulted in his death and in injury to the plaintiffs. The plaintiffs brought separate actions against the insurance company, alleging that Kelly at the time of the accident was its agent and employee; that he was operating his car in its service and within the scope of his employment; that each of the plaintiffs was a passenger and invitee of the company, and that the accident and their injuries were due to the negligence of Kelly. The company removed the cases to the federal court, wherein it filed answers denying that at the time of the accident the plaintiffs were its passengers and that Kelly was its agent or was operating the car in its service. The cases were consolidated for trial and tried to a jury, which returned a verdict in favor of each plaintiff. From the judgments entered thereon, the company has appealed.

The company asserts that the court erred: (1) in denying its motion for a directed verdict at the close of the evidence; (2) in certain of the instructions to the jury; and (3) with respect to certain rulings on evidence.

No question is raised as to the sufficiency of the evidence of Kelly's negligence or as to the amount of damages. The important question is whether, under the common law of Missouri, liability of the company for the negligence of Kelly was established.

The facts, as we must take them to be, in view of the verdicts of the jury, are, in substance, as follows: Kelly, the driver of the car, was a soliciting and collecting agent of the company. It was his duty to collect the premiums from all of the company's industrial policy holders residing within a designated territory or "debit" assigned to him. His debit was in a thickly settled portion of Kansas City and he was required to call each week upon approximately 250 families. He was licensed as an insurance agent in Kansas and Missouri and was authorized by the company to solicit life insurance inside and outside of his debit. He was not required to solicit insurance outside of his debit. The amount of his compensation depended upon his success in maintaining in force the business within his debit and in procuring new business for the company. He used his car in connection with his work for the company and with its knowledge. He was not required by the company to use his car; none of the expense of its opera-

tion was borne by the company; and his compensation was not based upon the use of his car. What means of travel he used in making his collections and soliciting business was apparently a matter of no concern to the company. It was interested in results and not in the particular means by which such results were obtained. Kelly's immediate superior was a Mr. Monahan, Assistant Superintendent of the district which included Kelly's debit. Mr. Magoon was Manager of the district. Kelly received instructions and suggestions from Mr. Monahan with respect to his work. He turned in his collections and made his reports at the district office in Kansas City.

The plaintiff Gosney, at the time of the accident, was a filling station attendant. His place of employment was in the southwest part of the City, at 804 West 47th Street. He roomed with the plaintiff Benson at 3536 Genesee Street, almost directly across the street from where Kelly lived. Benson worked at 1425 Grand Avenue. Kelly and Monahan traded at the oil station where Gosney was employed, and frequently met there for business conferences. At one of these conferences, on or about September 11, 1935, Monahan, in the presence of Gosney, asked Kelly why he could not sell Gosney some insurance. Gosney told Monahan that he would not buy insurance unless Benson, his roommate, bought some; that Benson had been an insurance man and if this insurance was not good enough for Benson it was not good enough for him. Monahan then told Kelly "to take" Gosney and "go get hold of Mr. Benson and sell" them "that insurance". September 21, 1935, was a Saturday. There was no requirement of the company that Kelly work after noon on Saturdays. Kelly met Gosney at about 6 P.M. at Gosney's residence. Gosney was about to drive his car to Benson's place of business to bring him home and had just telephoned Benson to that effect. Kelly told Gosney that he had come to talk insurance. Gosney told him that he did not have time; that he had to go for Benson. Kelly said that that was fine; that he wanted to talk to Benson about insurance; and he said to Gosney, "Come downtown with me in my car and we will get Mr. Benson." Kelly's car was parked across the street from Gosney's house. Kelly drove Gosney to Benson's place of business. Benson was not there, but they found him at a restaurant nearby.

Kelly told Benson that he had come to sell him some insurance, and asked him if he had received the raise which he had been expecting. He said that he had, and Kelly then asked him if he would take "that insurance policy". Benson said, "I told you I would." Kelly took two applications from his pocket, but Gosney told him that he did not have any money with him to pay the premium and would have to get it at his house. Kelly said that would be all right; that he had a couple of collections to make and that he would take Gosney home and he could get the money. Kelly was in a hurry because he had to see some people before they left home. Benson, Gosney and Kelly then entered Kelly's car. Kelly drove east and south for some distance, when Benson remembered that he had a suit at the cleaners, and they turned around and went back for that. They then started for home. On the way they stopped at a place "where Kelly said there was a party he wanted to see over there. One of his clients had moved off his debit." Kelly went into an apartment building and was gone several minutes. On his return, he drove out Karnes Boulevard to the point where the accident occurred. This was the direct route home. Kelly apparently intended to make another collection before going home. It is supposed that these collections were of delinquent premiums from policy holders who had moved out of Kelly's debit. Agents such as Kelly collected such premiums from such policy holders for the purpose of putting their policies in condition to be turned over to the agent having the debit to which the policy holders had moved.

The situation at the time of the accident was apparently this: Kelly, the agent of the company, was engaged in soliciting insurance and collecting premiums outside of his debit and had as guests in his car two prospects for insurance. Were these guest passengers the passengers of Kelly, for whose injuries Kelly alone was liable, or were they also passengers of the company, riding at its risk?

The exact question here presented does not appear to have been decided by the courts of Missouri. For the applicable rules of law, the parties rely mainly upon the cases of Chiles v. Metropolitan Life Ins. Co., 230 Mo.App. 350, 91 S.W.2d 164, and Vert v. Metropolitan Life Ins. Co., Mo.Sup., 117 S.W.2d 252, 116 A.L.R. 1381. The Chiles Case involved a collision between the automobile of an insurance agent like Kelly and an automobile driven by Chiles. Chiles sued both the agent and the company, and recovered against both. On appeal, it was urged that the company was not liable, since the agent was using his own car and was not acting within the scope of his employment at the time the accident happened. The recovery against the company was sustained upon the ground that, at the time of the collision, the agent was engaged in collecting premiums for the company within his debit and was using his car in so doing, with the knowledge of the company. In the Vert Case, an agent such as Kelly, who, like Kelly, was attempting to write insurance outside of his debit and was driving home, negligently became involved in a collision in which Vert was injured. Vert sued both the agent and the company, and recovered a verdict against both. The Supreme Court of Missouri reversed the judgment against the company. We quote the following excerpts from the opinion of the court which clearly show its ruling and the basis for it (pages 256, 257, of 117 S.W.2d) :

"The decisive point is that Crowe [the agent] was not on or returning from a trip which the company had directed him to make, nor which was made for the purpose of performing any duty the company required him to do. The trip was made to carry on another kind of activity which was clearly separate and apart from his regular industrial insurance duties.

\* \* \* \* \* \*

"A person, who is ordinarily known as a life insurance agent is certainly not within the classification of a servant or employee subject to direction as to how he shall attempt to accomplish results. His employment is solely for the purpose of bring about contractual relations between his company and others. He works on his own initiative. His principal is properly held not to be liable for physical harm he causes because it has nothing to do with directing his physical movements. Wesolowski v. John Hancock Mut. Life Ins. Co., 308 Pa. 117, 162 A. 166, 87 A.L.R. 783; American National Ins. Co. v. Denke (Tex.Com.App.) [128 Tex. 229], 95 S.W. 2d 370, 107 A.L.R. 409; American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S.W.2d 115; American Law Institute, Restatement of Agency, §§ 220, 250, 251.

\* \* \* \* \* \*

"We hold that Crowe's activity as a life insurance agent was so entirely separate

from his work in his industrial insurance debit that it was no part of it; that when he went out of his debit for that purpose he wholly departed from his regular employment in which the company had the right to direct his physical activity for its accomplishment; that the company neither reserved the right to direct the manner in which Crowe should travel, outside of his debit for the purpose of selling old line life insurance, nor expressly or impliedly directed his travel in such business; and that it is not liable for physical damage he did when making trips solely for such purpose wherever he desired to go in Illinois or Missouri, or in returning from such expeditions."

It is evidently the law in Missouri that: (1) liability for injuries to a third person caused by the negligent operation of the automobile of an insurance agent such as Kelly while he is engaged in the solicitation of ordinary life insurance outside of his industrial debit, may not be visited upon the company which employs him; and (2) liability for injuries to a third person caused by the negligent operation of such an agent's automobile while he is engaged in collecting premiums upon industrial policies within his debit, may be visited upon the company employing him.

It is to be noted, however, that neither of the cases above referred to deals with the situation of an insurance agent carrying passengers in his car while engaged in the solicitation of business or the collection of premiums.

While it is doubtful whether there is sufficient evidence in this case to justify a finding that Kelly, at the time of the accident, was engaged in making collections of delinquent premiums from persons who had moved outside of his debit and which he was required by the company to collect, we shall assume, in view of the introduction (without objection) of the testimony from which that inference is said to be deducible, that the jury was justified in finding that he was engaged both in the solicitation of insurance and in the collection of insurance premiums which the company required him to collect. That being so, it seems probable, under the Missouri rules as above stated, that if Kelly, under the circumstances existing at the time of the accident, had negligently run anyone down with his car, the person so

injured might have recovered from the company as well as from him.

There is, however, in the record no evidence which would justify an inference that it was any part of Kelly's business as an agent for the company to transport in his automobile the policy holders or prospective policy holders of the company, either at its risk or otherwise; nor is there any evidence to show that Kelly had received from the company any authority, express, implied or apparent, to invite insurance prospects or others to ride with him as guests of the company, unless the direction or suggestion of Monahan, made some ten days before the accident happened, that Kelly take Gosney and get hold of Benson and sell them insurance, can be so interpreted. That direction or suggestion of Monahan did not designate in any way the means to be used by Kelly in getting Gosney and Benson together. If Kelly had immediately complied with this suggestion by inviting Gosney, in the presence of Monahan, to get into Kelly's car and go down to see Benson, there would be some justification for assuming that Monahan had extended an invitation to Gosney to ride with Kelly. But this suggestion was not acted upon at the time, and the evidence does not show that Kelly, in inviting Gosney to accompany him on the evening of September 21st, was acting upon the suggestion of Monahan or that either Gosney or Benson was relying upon it in riding with Kelly. In fact there is nothing to show that Benson ever knew of Monahan's suggestion. The direction or suggestion of Monahan, relied upon by the plaintiffs as an invitation—particularly in view of the fact that Gosney and Benson were roommates living across the street from Kelly—is more consistent with the theory that Monahan never thought of Kelly's car in connection with getting Gosney and Benson together, than with the theory that he was authorizing or directing Kelly to invite them to ride with him as guests of the company.

It is a well established rule that where evidence is equally consistent with two hypotheses, it tends to prove neither. P. F. Collier & Son Co. v. Hartfeil, 8 Cir., 72 F.2d 625, 630, and cases cited.

Giving to the plaintiffs the benefit of every reasonable inference which can be drawn from the evidence in their favor, the fact is that they were riding with an agent who was driving his own car and

who was not shown to have any authority to carry passengers for the company while engaged in soliciting insurance and collecting premiums.

The rule in Missouri seems to be that an employee driving an automobile for his employer, where the scope of the employment does not include the transportation of passengers and the employer has given no authority to the employee to transport passengers, cannot render his employer liable by his negligent operation of the automobile which he is driving which results in injury to one whom he has invited to ride with him.

In Berry v. City of Springfield et al., 13 S.W.2d 552, 553, the Supreme Court of Missouri, in dealing with a petition alleging that the plaintiff was negligently injured while a passenger on the truck belonging to the city, said: "By the petition the plaintiff was riding on the truck at the invitation of the defendants [the city and the truck driver]. It does not appear who extended the invitation on behalf of the city. We infer plaintiff concluded the invitation of defendant Wade was also an invitation of the city. Wade was not employed to transport people about the city; hence, an invitation to ride was beyond the scope of his employment. It follows the plaintiff in riding on the truck was a trespasser as to the city." See, also, Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157; Stipetich v. Security Stove & Mfg. Co., Mo.App., 218 S.W. 964, 967.

■ We feel justified in assuming that the rule in Missouri is in substantial accord with the general rule that an employee using an automobile in his employer's business has no implied or apparent authority to invite others to ride with him, and that, if a passenger who accepts the unauthorized invitation of the employee is injured, the employer is not liable, for the reason that the passenger is not a guest of his but merely a guest of his employee. Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678, 685, citing: White v. Brainerd Service Motor Co., 181 Minn. 366, 232 N.W. 626, 627; Dearborn v. Fuller, 79 N.H. 217, 107 A. 607; Higbee Co. v. Jackson, 101 Ohio St. 75, 128 N.E. 61, 14 A.L.R. 131; Union Gas & Electric Co. v. Crouch, 123 Ohio St. 81, 174 N.E. 6, 74 A.L.R. 160; Chajnacki v. Dougherty, 254 Mich. 296, 236 N.W. 789; Rolfe v. Hewitt, 227 N.Y. 486, 125 N.E. 804, 14 A.L.R. 125; Psota v. Long Island R. Co., 246 N.Y. 388, 159 N.E. 180, 62 A.L.R. 1163; Monnet v. Ullman, 129 Or. 44, 276 P. 244; Hughes v. Murdoch Storage & Transfer Co., 269 Pa. 222, 112 A. 111; Wing v. Martin, 101 Vt. 108, 141 A. 602. See, also, 5 Am.Jur. pp. 728–729, §§ 393, 394, and Annotations to Psota v. Long Island R. Co., N.Y., supra, 62 A.L.R. 1163, 1168.

It is our conclusion that the court erred in denying the motion of the company for a directed verdict.

■ Since there will have to be a retrial of the case, it is necessary to consider whether the plaintiffs were competent to testify as to conversations with the deceased Kelly. Their evidence as to such conversations was objected to on the ground that § 1723, R.S.Mo.1929, Mo.St. Ann. § 1723, p. 3994, rendered them incompetent to testify. That section, so far as pertinent, provides—"that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead * * * the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, * * *."

It is our opinion that the evidence of the plaintiffs as to conversations with Kelly was not inadmissible as against the objection made to it. The plaintiffs were under no contract with Kelly, but were mere guests in his car. The causes of action in issue and on trial were the individual causes of action of the plaintiffs against Kelly's employer.

In the case of Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, 402, the Supreme Court of Missouri said: "It seems that a plaintiff, in an action for personal injuries, cannot be said to be disqualified under the statute from testifying concerning what an employee (of the defendant) who injured him said or did, by the death of the employee, without writing into the statute an additional disqualification which is not there." See, also, in this connection, Maryland Casualty Co. v. Cook-O'Brien Constr. Co., 8 Cir., 69 F.2d 462, 467, 468; O'Neil v. Stratton, 8 Cir., 64 F.2d 911, 912; Alexander v. Shortridge,

172

33 Mo. 349; Darby v. Northwestern Mut. Life Ins. Co., 293 Mo.Sup. 1, 239 S.W. 68, 72, 73, 21 A.L.R. 920; Smith v. Brinkley, 151 Mo.App. 494, 132 S.W. 301, 302, 303; Cole v. Waters, 164 Mo.App. 567, 147 S. W. 552, 554, 555.

We think no useful purpose would be served by discussing the objections made to the instructions of the court or to other rulings upon evidence. There is no reason to apprehend that, upon a new trial, the charge would be the same or that the court would not make correct rulings as to admission of evidence if proper objections were made thereto. The difficulty which the court had with the instructions seems to have been due to the uncertainty in the minds of counsel with respect to the controlling issues of fact and law.

The judgments appealed from are reversed and the case is remanded for a new trial confined to the issue of the alleged liability of the Metropolitan Life Insurance Company to the plaintiffs.