## WALTER IRVIN, Inc., v. VOGEL et ux.

### No. 5364.

Court of Civil Appeals of Texas. Amarillo.

Jan. 5, 1942.

Rehearing Denied Jan. 26, 1942.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Monning & Singleton, of Amarillo, for appellees.

FOLLEY, Justice.

This suit was filed by the appellees, L. J. Vogel and wife, Bertha Vogel, against the appellant, Walter Irvin, Inc., dealer in Ford automobiles at Amarillo, for damages alleged to have been sustained in a collision between appellees' automobile driven by Mrs. Vogel and one driven and owned by Guy Byrd, commission salesman for the appellant, alleged to have been the agent and servant of Walter Irvin, Inc., within

the scope of his employment and in the furtherance of the appellant's business. The collision occurred about noon on December 4, 1939, while Byrd was driving home to lunch from appellant's place of business, a distance of about three miles. The trial resulted in a judgment upon a jury verdict in appellees' favor for $250 damages for injuries suffered by Mrs. Vogel and a like amount for damages to appellees' automobile.

As material here the jury found in response to two separate issues that from the time Byrd left appellant's place of business until the collision he had the intention of calling upon his next door neighbor, Howard Rooney, during the time Byrd was out for lunch for the purpose of trying to interest Rooney in the purchase of a Ford automobile. These findings were based solely upon the testimony of Byrd who was not a defendant but a witness in the case. It is conceded that the appellant was unaware of Byrd's intentions during the noon hour and that he was given no specific instructions with reference to his actions at such time by the appellant or its agents. The testimony reveals that after the collision Byrd proceeded to his home in Amarillo, where he immediately called next door for the purpose of seeing Rooney about selling him an automobile, but Rooney was not at home. Mrs. Rooney, however, was at home and Byrd talked to her. Some three or four days later Byrd saw Rooney and sold him a 1939 model demonstrator automobile belonging to one of Byrd's fellow salesmen who also worked for the appellant. The sale of such demonstrators was shown to have been a part of Byrd's duties as was the sale of new automobiles.

As we view this case the controlling question presented is whether or not the relationship between Byrd and the appellant was sufficiently established under this record to create liability upon the part of the appellant for Byrd's negligent conduct in driving his own automobile at the time of the collision. Granting that such relationship existed the appellant further urges that Byrd was not shown to have been in the course of his employment at the time of the collision.

In view of certain objections to the court's charge by the appellant, the trial court obviously treated the relationship between Byrd and the appellant sufficient as a matter of law to create liability upon the part of Walter Irvin, Inc. At least no issue was submitted to the jury in this respect. The appellant's objection to the charge for such omission was as follows: "The Court's Charge, by its omission of any reference to the relationship between Byrd and the defendant, erroneously treats that relationship as a matter of law as being that of employer and employee or master and servant, when, if the evidence does not conclusively reveal Byrd to have been an independent contractor, it in any event creates an issue of fact thereon." The court overruled this objection and also appellant's written motion for a directed verdict which was augmented by an oral motion for a peremptory instruction in which the appellant urged that the evidence reflected as a matter of law that the relationship between Byrd and the appellant was not that of master and servant or employer and employee but that of an independent contractor. The trial court's action in this respect affords the basis for the appellant's complaint that the evidence showed as a matter of law that Byrd was an independent contractor or in the alternative presented a question of fact which in the face of the objection to the court's charge should have been submitted to the jury.

The appellees insist that the above objection to the court's charge was insufficient as a predicate for this complaint of the appellant. In this connection the appellees contend, first, that the objection was not specific enough to call the court's attention to the omission in the charge of the issue on the relationship between Byrd and the appellant, and, secondly, that in addition thereto it was appellant's further duty to prepare and tender to the court a correct charge upon this question. We think the objection was sufficiently specific to apprise the trial court that the appellant was complaining because the court had failed to submit an issue relative to the relationship between Byrd and the appellant and further that the court was erroneously treating such relationship as being that of employer and employee or master and servant as a matter of law when the evidence did not justify such conclusion. Such an objection in our judgment was adequate to preserve the point here presented by the appellant. We are further of the opinion that the appellant was not required to prepare and present to the court a special charge on the question of master and servant. Wichita Falls & Oklahoma Ry. Co.

et al. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 85. This matter was certainly essential to a recovery by the appellees and a part of their cause of action. As to the duty of parties to present issues for the benefit of the cause of action or defense of the opposite parties, Justice Sharp in the Pepper case said: "We find no language in Art. 2190 which places the duty on the plaintiff to present defensive issues which would support a judgment for the defendant; and no duty rests on the defendant to present such issues as are essential to a recovery by the plaintiff." It therefore becomes necessary for us to determine whether or not the evidence showed as a matter of law that Byrd was independent of the appellant in his operation of the automobile or in the alternative if a question of fact was presented upon the issue of master and servant.

The testimony shows that Byrd made an oral agreement with Walter Irvin, president of the appellant company, to sell Ford automobiles for the appellant. He began his labors in September, 1939, and pursued them continuously until March, 1940. He drew no salary. His compensation was a commission allowed upon the sale of automobiles. When he first began his work he was allowed a drawing account of $25 per week but these advances were finally charged back to his accrued commissions. At the time of the collision on December 4, 1939, the company had ceased making him any weekly cash advances. The company employed several salesmen other than Byrd. All of these salesmen including Byrd met each morning at 8:00 o'clock at appellant's place of business for a short sales meeting. The testimony is silent as to what transpired at these meetings or as to whether or not the salesmen were then given any specific instructions from the appellant or its agents with reference to their movements and conduct for that or any other day. Once or twice each week each salesman, including Byrd, was required to stay at the appellant's place of business a half day and perform what was called "floor duty", which was to look after any prospective purchasers who might drop in, list such prospects for future reference and attempt to sell them automobiles. The company sold to each salesman a Ford automobile which he used as a demonstrator. These were sold and financed upon a special plan somewhat more favorable than that extended to regular customers. These salesmen owned these automobiles and were privileged to use them for their personal uses as well as for demonstration purposes. When these salesmen severed connections with the company they were permitted to keep such demonstrators or if they did not desire to do so the company would take them back without loss to the salesmen. Byrd's automobile which was involved in the collision was a 1940 model sold to him by the appellant. He retained it after he quit the company and still owned it at the time of the trial. Byrd and the other salesmen bought their own gasoline for these demonstrator automobiles. The appellant furnished the oil for them, washed and greased them regularly and kept them in good running order. Each of these automobiles was registered in the name of the salesman owning it. Occasionally the company would loan Byrd and the other salesmen other automobiles as needed for demonstration purposes. Byrd attended the sales meeting each morning and took his turn with the others at floor duty. On the day of the collision he had been on floor duty all morning but ended his services in such capacity for the day before he left for his lunch and was under no obligation to return to appellant's place of business that afternoon but free to go and come as he pleased looking for prospects. While away from appellant's place of business Byrd kept in contact with the company office by telephone calls about every hour to see if any prospects were in to see him. Byrd's testimony was to the effect that he was required to call in to the office but Walter Irvin testified that although the practice was followed by his salesmen no such fixed policy was required by his company, such matter having been left to the discretion of each salesman.

In so far as the control over Byrd's movements was concerned when he was away from appellant's place of business the testimony of both Walter Irvin and Guy Byrd tended strongly to establish the appellant's theory that Byrd was independent in such operations, particularly with reference to the manner in which Byrd's automobile was driven. Irvin testified that Byrd was "pretty well his own boss" in that he could use his own discretion as to what particular hours he would work or as to what prospects he would see or where he would go; that in the long run Byrd was not under any strict rules or regulations as to the time he worked; and that the more hours

he put in the more money he would probably make. Byrd testified that when it came to determining the exact number of prospects he would see or the exact hours he would work or the selection or location of his prospects, he would largely use his own judgment, and, while he was ultimately responsible to Walter Irvin, Inc. in the sense that he was supposed to sell cars, when it came to the matter of how he would do it that was something which was "checked back" to him; that to a "large extent" the details of selling automobiles on a commission basis were left to his discretion; and that while on some particular deals he would have instructions from the sales manager, generally he would use his own judgment. However, the testimony is silent as to whether or not Byrd had the authority to close a contract with a purchaser or to fix and determine the terms of the sale or trade. It should also be noted that the above testimony of Walter Irvin about Byrd's being "pretty well his own boss" is very uncertain and speculative in many respects, particularly with reference to the control of Byrd's automobile. The testimony of Byrd was equally indefinite in that he stated that he could "largely use his own judgment" in the execution of his duties and that to a "large extent" the details of selling the automobiles was left to his discretion. These matters which were left indefinite and doubtful by the record are indeed important in determining the relationship between Byrd and the appellant.

The above testimony in our judgment fails to show conclusively that Byrd was independent of the appellant in the operation of his automobile at the time of the collision. Neither are we of the opinion that such testimony establishes as a matter of law that the relationship of master and servant or employer and employee existed in the operation of the automobile. However, we do think a question of fact was presented in this respect which under this record should have been submitted to the jury.

In this connection we prefer not to use the term "independent contractor" which, as was said by the late Judge German in American Nat. Ins. Co. v. Denke et al., 128 Tex. 229, 95 S.W.2d 370, 374, 107 A.L.R. 409, is perhaps a misnomer, since if Byrd was independent in the control of his automobile it would be more accurate to say that "no contractual relations whatever existed" as to the operation of the automobile. It is apparent from the above facts that Byrd in driving his automobile was not a "servant" within the usual significance of that term, but more accurately should be termed as an "agent" or "broker". This fact therefore compels us to apply the principle governing such matters where the relationship of principal and agent is involved and as particularly applicable in such cases of this special class.

A very reasonable and commendable rule in this respect was announced in Section 250 of the Restatement of the Law of Agency by the American Law Institute as follows: "A principal employing another to achieve a result but not controlling nor having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor."

This rule was applied in the Denke case, supra, in a very learned opinion by Judge German, in the course of which he said: "We are brought, therefore, to the precise inquiry as to whether or not in this instance Saunders, in his capacity as agent, also occupied the further capacity of servant of the insurance company in the matter of operation of the automobile. It is settled that 'the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect.' Putting the matter in a different way, it may be said that a master is liable for acts of his agent under the doctrine of respondeat superior only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises."

It is apparent that this doctrine is a departure from the old rigid rule applicable in

cases of master and servant. It recognizes clearly the distinction between an ordinary servant and the position of an agent or a broker obviously occupied by Byrd in this case. The reason for such departure is very forcefully expressed in an able opinion by the Supreme Court of Wyoming in the case of Stockwell v. Morris et al., 46 Wyo. 1, 22 P.2d 189, 195, wherein a review is made of most of the important American cases falling in this class. From that opinion we quote: "Every rule should, of course, have a reason. Why should we depart from the ordinary rule applicable in the case of master and servant? Is that departure, in the case at bar, based on reason? We think it is. We have, it may be noted, laid some emphasis on the fact of the ownership of the automobile in question. It has been said that when a plaintiff has suffered injury from the negligent management of a vehicle, it is sufficient prima facie evidence that the negligence was imputable to the owner thereof, though driven by another. 1 Shearman & Redfield, on Negligence (6th Ed.) par. 158; Houston v. Keats Auto Co., 85 Or. 125, 166 P. 531. The converse of that proposition should, of course, be true. Nay more, it has often been said that ordinarily a person who is not the owner and is not in control of certain property is not liable for negligence in respect of such property. 45 C.J. 882. And surely that is in accordance with the plain dictates of justice, unless a countervailing reason appears in a particular case. A number of cases are found in notes to 57 A.L.R. 739 and 60 A.L.R. 1163, in which it was held that the fact that an employee drove his own car or other vehicle did not relieve the employer from liability for the negligence of the employee in driving such car. But generally speaking that ought to be limited, we think, to those cases in which the driver is a servant, as distinguished from an agent, or in which it clearly appears that the right of control is reserved to the principal, and it has, we think, been generally so limited except in the class of cases already heretofore mentioned."

In further support of the above proposition is the case of James v. Tobin-Sutton Co., 182 Wis. 36, 195 N.W. 848, 29 A.L.R. 457, which is similar in fact situation to the instant case except it was made clear and certain in the former case that the Tobin-Sutton Company exercised no direct control over Sovic, the automobile salesman therein, in his operation of his automobile, and thus no issue of fact was presented. In that case Sovic sold automobiles on commission. He was required to own and finance his own car but employed his time as he pleased after making the required call at headquarters for instructions at 8:00 o'clock each morning. It was held as a matter of law that he was an independent contractor. That case was cited with apparent approval by the Commission of Appeals in National Cash Register Co. et al. v. Rider, 24 S.W.2d 28, 31.

■ The true test in all of the cases on this question seems to be that in order to hold the principal liable it is not sufficient that he be interested only in the ultimate results to be accomplished by his representative, but he must also have the right to control the *physical details as to the manner of the performance* of the work. In the instant case the testimony was controverted and conflicting, but not conclusive, on this very point. The decisive inquiry is whether the appellant had the right to control Byrd in the management and operation of his automobile at the very time of the collision. The evidence having left this issue doubtful it is resolved into one of fact which under this record should in some adequate manner have been submitted to and determined by the jury. We therefore conclude the court erred in overruling the appellant's objection to the court's charge, but of course under such circumstances there was no error in refusing the peremptory instruction. National Cash Register Co. et al. v. Rider, supra; Texas Employers' Ins. Ass'n v. Owen et al., Tex.Com.App., 298 S.W. 542; Jernigan v. Houston Ice & Brewing Co., 33 Tex.Civ.App. 501, 77 S.W. 260; McCarthy v. Souther, 83 N.H. 29, 137 A. 445; Barton et al. v. Studebaker Corporation of America et al., 46 Cal.App. 707, 189 P. 1025; Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 164 N.E. 77, 60 A.L.R. 1159; Wesolowski v. John Hancock Mut. Life Ins. Co., 308 Pa. 117, 162 A. 166, 87 A.L.R. 783; Trachtenberg et al. .v. Castillo, Tex.Civ.App., 257 S.W. 657; McElwrath v. Dixon, Tex.Civ.App., 49 S.W.2d 995; El Paso Laundry Co., Inc., v. Gonzales, Tex.Civ.App., 36 S.W.2d 793.

■ In view of our disposition of the above question the second complaint of the appellant with reference to Byrd's not being in the course of his employment at the time of the collision becomes immaterial unless we further conclude as a matter of law that

.regardless of the relationship between the appellant and Byrd the latter was not in the pursuit of appellant's business at the time the injuries were sustained. Suffice it to say that in our judgment the record presented does not authorize such a peremptory conclusion but resolves the question into one of fact which under similar circumstances upon another trial must necessarily be determined by the court or jury. What we have said we think sufficiently disposes of the material points in this appeal.

The judgment is reversed and the cause remanded.