[No. 28972. *En Banc.* September 27, 1943.]

R. C. HOBBA et al., Respondents, v. POSTAL TELEGRAPH-CABLE COMPANY, Appellant.[1]

[1]Reported in 141 P. (2d) 648.

*Witherspoon, Witherspoon & Kelley,* for appellant.

*Robertson & Smith,* for respondents.

GRADY, J.—This action was brought by R. C. Hobba and wife against the Postal Telegraph-Cable Company, a corporation, to recover damages for injuries sustained by Mrs. Hobba as the result of a collision with two messenger boys in the employ of defendant, who, while in the performance of their duties, negligently ran into her. A trial before the court and a jury resulted in a verdict for the defendant. The court granted the motion of plaintiffs for a new trial, from which order the defendant has taken this appeal.

Mrs. Hobba will hereinafter be referred to as though she were the sole respondent.

The answer of the appellant denied the material allegations of the complaint, and alleged affirmatively that, if respondent was injured by the messengers' colliding with her, such injury was caused by their independent acts, which were not within the scope of their employment with appellant. There is also a plea of contributory negligence on the part of respondent, but there is no question on that subject before the court in this appeal. The affirmative matter of the answer was denied by respondent's reply.

The appellant assigns as error the denial by the court of its motion for nonsuit, made at the close of respondent's evidence. The appellant did not stand on its motion, but submitted evidence in its own behalf, and, therefore, the whole record is now before us for review. *Alkire v. Myers Lbr. Co.,* 57 Wash. 300, 106 Pac. 915; *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 Pac. 756.

By its second and third assignments of error, the appellant contends that the court erred in granting the motion of respondent for a new trial, denying its motion for a directed verdict, and in vacating the verdict of the jury.

The order granting the motion for a new trial was

general and did not specify the ground or grounds upon which it was based. Our inquiry can go no further than to determine whether the evidence was sufficient to take the case to the jury. *Morehouse v. Everett*, 136 Wash. 112, 238 Pac. 897; *Wood v. Hallenbarter*, 12 Wn. (2d) 576, 112 P. (2d) 798; *Rambo v. Puget Sound Navigation Co.*, 12 Wn. (2d) 637, 123 P. (2d) 355.

▌ The evidence upon which the parties base their respective claims of liability and nonliability is conflicting. But, in determining whether there was sufficient evidence to take the case to the jury and upon which a verdict for the respondent might rest, we must take that evidence most favorable to the respondent, with all the reasonable and proper inferences that may be drawn therefrom; and if, when this is done, it can be said that a verdict for the respondent would have been justified, then the court was not in error in denying the motion for a directed verdict. The factual situation most favorable to respondent is substantially as follows:

The appellant had in its employ two messenger boys, Eugene Allison and Zene Whipple. At the time of the injury to respondent, both boys were dressed in uniforms supplied by appellant. About four o'clock in the afternoon of the day in question, Whipple returned from a trip he had made with another messenger, and he was standing on the public sidewalk in front of appellant's telegraph office on the east side of Howard street, in the city of Spokane. At that time, Allison came out of the office, charged with the duty of going on foot on an errand which would take him to the place of business of the Spokane Chronicle and from there to the store of the J. C. Penney Company, on Riverside avenue. The ordinary and usual route of travel by foot would be to go south from the telegraph office to Sprague avenue and either cross Howard at its intersection with Sprague, or continue south and cross Sprague, and thence west.

When Allison came out of the telegraph office, he stopped in front of Whipple, and, in a friendly manner, struck him

on the chest, and then ran south along the sidewalk towards Sprague. Whipple followed in pursuit. Meanwhile, respondent and a woman companion were traveling east and crossing Howard along the north side of Sprague, with the intention of taking passage on a bus at the northeast corner of the intersection of these streets. As respondent stepped from the street to the sidewalk, she was slightly in advance of her companion. The boys were then advancing, both running, and Whipple had seized Allison by either the shoulders or neck. Both of the boys, while in this position, negligently and violently collided with respondent, causing her to fall, from which she sustained severe injuries.

Much of the foregoing was in dispute at the trial, but it is with this version of the case we must approach the legal questions involved. We must also indulge in the assumption that Allison, at the time of the accident, was on his way to the Chronicle building in the performance of the duties assigned him by the appellant. This factual situation presents the question for decision, which is well-stated by appellant in its brief as follows:

"If we assume now—merely for the sake of this argument — that the Telegraph Company was employing Whipple at the time to deliver messages and that at the time of the accident, both he and Allison were actually delivering undelivered messages for the Telegraph Company, and further that they had not diverted from their duties but were simply pursuing their course along the street, is the Telegraph Company liable for the boys walking or running along in such a careless manner as to run into and injure another pedestrian?"

We are not concerned with those cases in which the messenger boy was riding a horse or a bicycle or driving an automobile in the performance of his work for his employer, nor those cases in which, by reason of the shortness of time allotted by the employer for the act of delivering a message, the employer required extra haste of the messenger and an injury resulted to a third party, but are limiting our decision to a case where the means of locomotion was

by foot and in such a manner as the messenger himself might choose.

We have not been cited to any decision of this court involving the negligence of an employee traveling on foot, nor, after much search, have we been able to find one. The appellant has cited the following cases dealing with locomotion on foot: *Phillips v. Western Union Tel. Co.*, 270 Mo. 676, 195 S. W. 711, L. R. A. 1917F, 489; *Ritchey v. Western Union Tel. Co.*, 227 Mo. App. 754, 41 S. W. (2d) 628; *Wesolowski v. John Hancock Mutual Life Ins. Co.*, 308 Pa. 117, 162 Atl. 166, 87 A. L. R. 783.

The first two of these cases deal with the negligence of an employee while traveling on foot. In the *Phillips* case, the court reasoned that the messenger boy, who, while traveling on the public street, negligently collided with a pedestrian, was not there by permission of his employer, but in the exercise of his right as a member of the public and which right went with his services only so far as it was necessary to the performance of the duty involved, and that it would be carrying the doctrine of *respondeat superior* too far to apply to employees who, while on foot, injure others by their "rollicking movements."

The *Ritchey* case was before an inferior court of the same state. It followed the *Phillips* case, the court remarking:

"Whether the doctrine of the *Phillips* case is sound or unsound is not for this court; it is controlling, notwithstanding holdings in other jurisdictions to the contrary."

The *Wesolowski* case was one where the employee was operating an automobile and injured the plaintiff. The case turned on the question of whether the employer had or exercised any actual or potential control over the instrumentality used by the employee. There was no question of locomotion by foot involved. The court was of the opinion that the employer had no more control over the movements of the employee while he was driving the automobile than he would have had if the employee had been on foot and, as he passed from person to person, negligently injured one of them.

The respondent cites the following cases, which also deal with employees traveling on foot: *Tighe v. Ad Chong,* 44 Cal. App. (2d) 164, 112 P. (2d) 20; *Schediwy v. McDermott,* 113 Cal. App. 218, 298 Pac. 107; *Price v. Simon,* 62 N. J. L. 153, 40 Atl. 689; *Ryan v. Keane,* 211 Mass. 543, 98 N. E. 590, 47 L. R. A. (N. S.) 142; *Missouri K. & T. R. Co. v. Edwards,* 67 S. W. (Tex. Civ. App.) 891; *Phillips v. Western Union Tel. Co.,* 194 Mo. App. 458, 184 S. W. 958.

These cases proceeded upon the theory that the question was whether, at the time the employee negligently caused the injury, he was actually engaged in doing that which he had been directed to do and acting within the scope of his employment regardless of his method of locomotion.

In some of the cases, as in this one, the claim was made that the employee, when he caused the injury, had deviated from his employer's business and was on "a frolic of his own"; and it was recognized, as it was by the trial court in the case at bar, that, if such was the case, there would be no liability on the part of the employer, but it would be a question for the jury if the evidence was in dispute.

We shall not extend this opinion by an analysis of these cases. The factual situation in each of the cases is somewhat different from the others and from the case before us, but they serve to illustrate the application of the rules governing the liability of an employer for the negligence of his employee when the employee is traveling on foot.

It is interesting, however, to note the history of the *Phillips* cases. Mrs. Phillips was injured by a messenger boy who was running along a public sidewalk and looking backward over his shoulder after he had snatched a paper from a newsboy. Two actions were brought, one by the husband for hospital and medical fees paid by him and for loss of the services of his wife, and the other by the wife for her personal injuries. Each secured a judgment. The former case went on appeal to the court of appeals of the state of Missouri and the latter to the supreme court of that state. The two courts reached directly opposite conclusions on the same facts. The supreme court based its conclusion

of nonliability, as stated, on the "rollicking movements" of a boy on a public sidewalk; the court of appeals used as its guide the principles of law applicable when an employee, acting within the scope of his employment, negligently injures another.

 In approaching the problem involved here and upon the factual situation outlined above, one may feel that a distinction can and should be made between a case where the employee uses some instrumentality in his work, such as an animal or a vehicle, which, if not properly managed or operated, will do injury to others, and one where the employee travels on foot. But in each kind of case the employer has some sort of work which he wants done. It is for his benefit. He either cannot or does not desire to do it himself. He employs someone to do it for him. The doing of the work necessitates travel from the employer's place of business to some other location. The employee, while actually doing the assigned work, does a negligent act which causes injury to another who is not in any way at fault.

Thus far, we have no hesitancy in saying that the employer is liable in damages to the injured person. Now, is there any logical reason why the same result should not follow whether the negligent act consists in the manner of driving the animal or operating the vehicle or in the manner of self-locomotion? The result to the injured person is the same. If the employer chooses to have the work done by another, he must be held responsible to others for the negligent conduct of his employee while doing the work, or else he should do the work himself. We think that, if we try to draw a distinction between the different methods of locomotion that might result in injury to others, we not only misapply the doctrine of *respondeat superior*, but also forsake it entirely.

So, it appears to us that both the reasoning and the application of the principles of law governing the relationship of employer and employee as to third parties in the cases cited by respondent are sound and should be adopted in

this case. It was upon these principles that the case was tried and submitted to the jury by the lower court, and they should be followed in any new trial that may be had.

The trial court was not in error in denying the motion for a directed verdict and in granting the motion for a new trial.

The order appealed from is affirmed.

ALL CONCUR.

[1]Reported in 141 P. (2d) 651.