PETRA OBDULIA RIVERA y JUAN ANDRÉS RIVERA, este último representado por JULIA RIVERA ACOSTA, demandantes, apelantes y apelados, *v.* FELIPE MALDONADO y THE PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandados, apelados y apelantes.

Núm. 10251.—*Sometido:* Enero 10, 1951. *Resuelto:* Mayo 3, 1951.

*Bolívar Pagán,* abogado de los demandantes, apelantes apelados; *Córdova & González* y *Alberto Picó,* abogados de los demandados, apelados apelantes.

EL JUEZ PRESIDENTE INTERINO SEÑOR TODD, JR., emitió la opinión del tribunal.

La cuestión primordial a resolver en estos recursos(¹) es si el dueño de un vehículo de motor, camión, dedicado a una empresa,(²) es responsable de los daños y perjuicios causados a una tercera persona como consecuencia del manejo negligente de dicho vehículo por su empleado en el ejercicio de sus funciones, cuando éste, sin conocimiento o autorización del dueño, ha invitado a dicha tercera persona a montar en el vehículo.

Al declarar con lugar la demanda en este caso y dictar sentencia condenando a los demandados a pagar a los demandantes la suma de $4,000 en concepto de daños y $400 de honorarios de abogado, más las costas, el tribunal inferior llegó a las siguientes conclusiones de hechos:

"1. Por resolución anterior, este Tribunal declaró a los aquí demandantes Petra Obdulia Rivera y Juan Andrés Rivera, únicos y universales herederos de su padre Juan Rivera, quien falleciera el día 11 de abril de 1949.

"2. Que allá para el día 5 de abril de 1949 y como a las 9:30 A.M., Juan Rivera fué invitado por el chófer Ángel M. Ortiz, empleado de Felipe Maldonado y en el curso de su empleo, para que montara en el camión tablilla H–47022, propiedad y empresa de Felipe Maldonado, guiado por dicho chófer; montado en dicho camión Juan Rivera, el vehículo siguió en marcha a velocidad exagerada como de 50 millas por hora por la calle Pimentel, que es la calle principal del pueblo de Río Grande,

---

(¹) Ambas partes han apelado de la sentencia y los recursos han sido consolidados.

(²) Artículo 1803 del Código Civil, ed. de 1930, según enmendado por la Ley núm. 120 de 12 de mayo de 1943 (pág. 373).

:y al tomar una curva en dicha calle el mencionado chófer aceleró la marcha dando lugar a que Juan Rivera y unos rollos de cartón que venían en la parte trasera de dicho camión fueran lanzados al pavimento de la calle, sufriendo allí y entonces Juan Rivera graves lesiones a consecuencia de las cuales falleció el 11 de abril de 1949.

"3. El expresado vehículo estaba asegurado por daños y perjuicios a personas, mediante póliza al efecto, con la codemandada Porto Rican and American Insurance Company.

"4. Juan Rivera, de unos 42 años de edad, era un obrero saludable que percibía un salario diario de $2.56, con lo que sostenía a sus mencionados hijos Petra Obdulia Rivera y Juan Andrés Rivera, de 22 años y 10 años de edad, respectivamente, quienes vivían con su padre."

Como conclusión de derecho hizo constar que la causa próxima y directa del accidente se debió a la exclusiva negligencia del chófer por haber conducido el vehículo en la forma expresada anteriormente.

No conformes con la sentencia ambas partes apelaron, los demandantes por no estar de acuerdo con la cuantía de la indemnización y de los honorarios de abogado concedidos y los demandados sostienen que el tribunal inferior erró: (1) al resolver que los demandados son responsables de la muerte de una persona invitada por el chófer del vehículo a montar en el mismo, y (2) al hallar probado que (a) Juan Rivera fué invitado a montar en el camión, y (b) que la causa del accidente fué la negligencia del conductor del camión. Consideraremos, en primer término, el recurso de los demandados.

En su contestación a la demanda, los demandados alegaron como defensas especiales que Juan Rivera se montó en el camión e iba viajando en el mismo sin permiso o autorización de persona alguna y sin conocimiento del conductor y que la muerte de Juan Rivera se debió única y exclusivamente a los actos negligentes de éste, quien por un acto de descuido propio cayó del vehículo sin poderlo evitar en forma alguna el conductor.

Al contestar un interrogatorio sometido por los demandantes, los demandados admitieron que el vehículo era propiedad y empresa del demandado Felipe Maldonado; que Ángel M. Ortiz era el chófer que guiaba el vehículo en el momento del accidente y que el chófer, en dicho día y hora, era empleado en el curso de su empleo del demandado Maldonado.

No obstante estas admisiones, sostienen los apelantes que la doctrina sostenida por la mayoría de las autoridades es al efecto de que el dueño de un vehículo no es responsable de los daños que sufra una persona que ha sido invitada por su empleado, sin su conocimiento, y señalan el hecho de que este Tribunal reconoció dicha doctrina en el caso de *Acosta* v. *Crespo*, 70 D.P.R. 239.

Es cierto que en dicho caso, a la pág. 249, dijimos:

". . . Si un peatón hubiera sido lesionado por el vehículo mientras el chófer lo manejaba en tal viaje, podría recobrar daños. Pero si el chófer lleva consigo como su invitado a alguna persona que no necesita para que lo ayude a cumplir su encargo, el dueño no es responsable por las lesiones causadas al invitado por la negligencia del chófer al manejar el vehículo. 5 Blashfield, supra, sec. 3016, pág. 148."

En efecto, la regla general, según se expone en la jurisprudencia, es que un empleado no tiene ninguna autoridad implícita para invitar o permitir a una tercera persona montar en un vehículo bajo su control y que, si al hacerlo, el invitado sufre daños por la negligencia del empleado, el patrono no es responsable ya que el empleado no estaba actuando dentro del alcance de su autoridad. *Wigginton Studio* v. *Reuter's Adm'r.*, 71 S.W.2d 14; *Metropolitan Life Ins. Co.* v. *Gosney*, 101 F.2d 167; *Erickson* v. *Foley*, 262 N.W. 177; *East Coast Freight Lines* v. *Mayor and City Council, etc.*, 58 A.2d 290 (Md., 1948); *Liggett & Myers Tobacco Co.* v. *De Parcq*, 66 F.2d 678 y Anotaciones en 62 A.L.R. 1167 y 74 A.L.R. 163. En otras palabras, la doctrina sobre "autoridad aparente" (*apparent authority*),

según rige en la relación de principal y agente, no es aplicable a casos de esta naturaleza. *Morris* v. *Dame's Ex'r*, 171 S.E. 662; *Gruber* v. *Cater Transfer Co.*, 165 Pac. 491; *Cole* v. *Johnson Motor Co.*, 9 S.E.2d 425; *O'Leary* v. *Fash*, 140 N.E. 282, y Anotación en 2 A.L.R.2d 406.

Como se dijo en el caso de *East Coast Freight Lines* v. *Mayor and City Council, etc.*, supra, pág. 303: " . . . . . la doctrina de autoridad aparente es aplicable solamente cuando la relación del patrono y empleado es la de principal y agente", resolviéndose además que "Aun cuando ambas relaciones se basan en un contrato, al medir el alcance de la autoridad de un agente, se da más énfasis a los términos del contrato mientras que en el caso de un empleado el énfasis recae de ordinario en la naturaleza del empleo. La distinción es de importancia aquí cuando debemos determinar la responsabilidad del patrono por los actos torticeros del empleado. En el caso del agente esa responsabilidad a menudo depende de la aparente autoridad del agente porque, siendo su función crear obligaciones primarias, la persona con quien trata, representando a su principal, puede con justicia quejarse si se le permite por el principal demostrar una apariencia de autoridad que no le ha sido de hecho concedida. En el caso de un empleado cuyos actos no crean, sino que violan, derechos primarios que dan lugar a obligaciones secundarias y derechos remediables, las apariencias son de menos importancia porque usualmente la tercera persona no es engañada por las representaciones del patrono en cuanto a la autoridad del empleado. En tal caso el curso del empleo se dice que es la base de responsabilidad. El hecho de que el empleado esté en general bajo el empleo del patrono no crea una inferencia de que cierto acto realizado por él estaba dentro del curso de su empleo. Para estarlo la conducta debe ser de la naturaleza que el empleado estaba llamado a realizar y debe ocurrir durante un período no irrazonablemente desconectado con el período del empleo, en un sitio no irrazonablemente distante del auto-

rizado y motivado por lo menos en parte con el propósito de servir al patrono. Mechem, *Agency*, sección 36; Huffcut, *Agency*, sección 5; *American Law Institute, Restatement, Agency*, sección 228, comentario (*b*)." No obstante decisiones en contrario, la tendencia de la jurisprudencia es en el sentido anteriormente expuesto. 5 Am.Jur. 729, sec. 394, y Anotaciones en 62 A.L.R. 1167 y 74 A.L.R. 163.

Creemos que la regla general debe prevalecer en estos casos de acuerdo con la responsabilidad establecida por el artículo 1803 del Código Civil, según enmendado por la Ley núm. 120 de 12 de mayo de 1943, en relación con el artículo 1802 del mismo cuerpo legal. (³)

█ Arguyen los apelados, sin embargo, que a esta regla general existe una excepción al efecto de que si en estos casos se demuestra que el daño fué consecuencia de negligencia injustificable, voluntaria o temeraria (*wanton, willful or reckless negligence*) en el manejo del vehículo, el dueño es responsable. Es cierto y esta excepción se expone en 5 Blashfield, *Cyclopedia of Automobile Law and Practice* 149, sección 3017, en esta forma:

"No obstante la regla general expuesta en la sección anterior, está resuelto por el peso de las decisiones judiciales que, si después del acto no autorizado del empleado y la violación de su deber hacia el patrono, y cuando actúa dentro del curso general de su autoridad, incurre en negligencia injustificable, voluntaria o temeraria (*wanton, willful or reckless*) en la operación de la máquina o vehículo bajo su cargo y como consecuencia se ocasionaren daños a su invitado o 'licensee', el patrono es responsable de los mismos, ya que tal operación se considera realizada dentro del curso general de su autoridad."

---

(³) El artículo 1803, en lo pertinente, dispone:

"La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

" .       .       .       .       .       .       .       .

"Los son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuviera empleados, *o con ocasión de sus funciones*." (Bastardillas nuestras.)

Esta excepción a la regla general ha sido aplicada o no en innumerables casos, dependiendo de los hechos especiales concurrentes y la forma en que ocurrió el accidente. Véanse los casos citados en las notas 81 a 90, págs. 149–51 de 5 Blashfield, ob. cit. y en las Anotaciones en 62 y 74 A.L.R., supra.

Aun cuando se le ha denominado "negligencia temeraria o injustificable", muchas autoridades sostienen que es un error calificarla así, pues se trata más bien de una actuación o conducta temeraria o voluntaria. *Universal Concrete Pipe Co.* v. *Bassett*, 200 N.E. 843; *Union Trust Co.* v. *Detroit, G. H. & M. Ry.*, 214 N.W. 166; *Weber* v. *Pinyan*, 70 P.2d 183. Asimismo, en una "Nota Especial" al comentario (*d*) de la sección 282 en II *Restatement of the Law of Torts* 740, se llama la atención hacia la distinción que existe entre uno y otro concepto, por sus distintas consecuencias legales, por cuyo motivo la conducta temeraria o injustificable se define, independiente de la de negligencia, en la sección 500, pág. 1293, en la siguiente forma:

"La conducta del actor es en temerario desprecio de la seguridad de otro si intencionalmente comete un acto u omite hacerlo el cual es su deber hacia el otro hacer, conociendo o teniendo motivo para conocer hechos que inducirían a un hombre razonable a darse cuenta que la conducta del actor no sólo crea un riesgo irrazonable de daño corporal al otro sino que también envuelve un alto grado de probabilidad de que daño sustancial se le ocasionará."

En el comentario (*g*) a esta sección se contrasta la negligencia y la temeridad diciéndose:

"La conducta temeraria difiere de la negligencia en varios particulares importantes. Difiere de aquella forma de negligencia que consiste en mera inadvertencia, incompetencia, falta de habilidad o la falta de tomar precauciones que permitan al actor dar frente a una posible o probable emergencia futura, en el hecho de que la conducta temeraria requiere una consciente elección de un curso de acción bien con conocimiento del serio peligro hacia otros expuestos al mismo o con conocimiento

de hechos que demostrarían. ese peligro a cualquier hombre razonable. Difiere no sólo de la forma de negligencia antes mencionada, sino también de aquella negligencia que consiste en intencionalmente realizar un acto con conocimiento de que contiene un riesgo de daño para otro, en el hecho de que el actor para ser temerario debe reconocer que su conducta envuelve un riesgo sustancialmente mayor en grado que aquél que es necesario para hacer su conducta negligente. La diferencia entre mala conducta temeraria y conducta que envuelve solamente tal grado de riesgo necesario para hacerla negligente, es una diferencia en el grado del riesgo, pero esta diferencia en grado es tan marcada que sustancialmente equivale a una diferencia en clase."

El único caso resuelto en esta jurisdicción y en el cual se aplicó la regla general es el de *Cruz* v. *Soto Mayor et al.,* 32 D.P.R. 189, pero en el mismo se aceptó la conclusión de la corte inferior al efecto de que la persona que sufrió el daño era un intruso o transgresor al montarse en un camión sin autorización del dueño *o del chófer* y que, como consecuencia, bajo el artículo 1804 (ahora 1803), el dueño no era responsable de los daños causados, aunque sí podía serlo otro demandado que también había incurrido en la negligencia que ocasionó el daño.

La dificultad en aplicar la excepción a la regla general en Puerto Rico estriba en que estaríamos ampliando el ámbito del artículo 1803, que solamente hace responsable al dueño de una empresa por los actos negligentes de su empleado "con ocasión de sus funciones", a aquellas actuaciones personales del empleado—aquí la invitación del chófer a Juan Rivera a montar en el camión—como si dichas actuaciones personales formaran parte de las funciones que tiene que realizar el empleado en el curso de su empleo. No se alegó, ni se probó, que al invitar el chófer a Juan Rivera a montar en el camión fuera con el fin de realizar función alguna para beneficio del dueño del mismo. No debemos, por tanto, por interpretación judicial, ampliar la esfera de la responsabilidad del patrono más allá de lo preceptuado

en el artículo 1803, supra. Aun en las jurisdicciones en que impera el derecho común la tendencia es a restringir la responsabilidad del dueño del vehículo en estos casos. 5 Am. Jur., sec. 395, págs. 730–31; Anotaciones en 62 y 74 A.L.R. y en 2 A.L.R.2d, supra.

Siendo ésta la conclusión a que llegamos, se hace innecesario discutir los demás errores señalados por los demandados, así como el recurso establecido por los demandantes, ya que habiendo cometido la corte inferior el primer error, *procede la revocación de la sentencia y se declara sin lugar la demanda.*

El Juez Asociado Sr. Snyder, aun cuando no asistió a la vista de este caso, concurre en esta opinión.