PETRA OBDULIA RIVERA ET AL., ETC., Plaintiffs and Appellants-Appellees, v. FELIPE MALDONADO ET AL., Defendants and Appellees-Appellants.

No. 10251.  Argued January 10, 1951.—Decided May 3, 1951.

*Bolívar Pagán* for plaintiffs and appellants-appellees. *Córdova & González* and *Alberto Picó* for defendants and appellees-appellants.

MR. ACTING CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The primordial question to be decided in these appeals [1]

---

[1] Both parties appealed from the judgment and the appeals have been consolidated.

is whether the owner of a motor vehicle, a truck, used by an enterprise,[2] is liable for the damages caused to a third person as a result of the negligent operation of said vehicle by his employee in the exercise of his duties, when the latter, without the knowledge or permission of the owner, invited said third person to ride in the vehicle.

In granting the complaint herein and entering judgment sentencing the defendants to pay to the plaintiffs $4,000 as damages and $400 as attorney's fees, plus costs, the lower court made the following findings of fact:

"1. In a previous order this Court declared Petra Obdulia Rivera and Juan Andrés Rivera, plaintiffs herein, sole and universal heirs of their father, Juan Rivera, who died April 11, 1949.

"2. That on or about April 5, 1949 and at approximately 9:30 A. M., Juan Rivera was invited by chauffeur Angel M. Ortiz, an employee of Felipe Maldonado, and in the course of his employment, to ride on truck, license H–47022, property and enterprise of Felipe Maldonado, driven by said chauffeur; after Juan Rivera got on the truck, the vehicle resumed its course at an exaggerate speed of about 50 miles per hour along Pimentel Street, which is the main street of Río Grande, and upon rounding a curve on said street, the above-mentioned chauffeur increased the speed, whereupon Juan Rivera and some cardboard rolls which were on the rear part of the truck were hurled onto the pavement of the street, Juan Rivera suffering then and there serious injuries in consequence of which he died on April 11, 1949.

"3. The aforesaid vehicle was insured against personal damages, by policy to that effect, with the codefendant, Porto Rican and American Insurance Company.

"4. Juan Rivera, of about 42 years of age, was a healthy laborer who received a daily salary of $2.56 with which he supported his aforesaid children, Petra Obdulia Rivera and Juan Andrés Rivera, 22 and 10 years old, respectively, who lived with their father."

As a conclusion of law it stated that the proximate and direct cause of the accident was due to the chauffeur's ex-

[2] Section 1803 of the Civil Code, 1930 ed., as amended by Act No. 120 of May 12, 1943.

clusive negligence in having driven the vehicle in the manner above set forth.

Feeling aggrieved by the judgment, both parties appealed, the plaintiffs, because they did not agree with the amount of the indemnity and of the attorney's fees, and the defendants, on the ground that the lower court erred: (1) in deciding that the defendants are liable for the death of a person invited by the chauffeur of the vehicle to ride thereon, and (2) in finding that (a) Juan Rivera was invited to ride in the truck and (b) that the cause of the accident was the negligence of the truck driver. We shall consider first the appeal taken by the defendants.

In their answer the defendants set up as special defenses that Juan Rivera boarded the truck and was riding therein with no one's leave or permission and without the driver's knowledge, and that Juan Rivera's death was due solely and exclusively to his own negligent acts, falling off the vehicle by his own careless act, the driver being unable to prevent it at all.

Upon answering an interrogatory submitted by the plaintiffs, the defendants admitted that the vehicle was the property and enterprise of the defendant, Felipe Maldonado; that Angel M. Ortiz was the chauffeur who drove the vehicle at the time of the accident and that the chauffeur, on said day and hour, was an employee of defendant Maldonado, in the course of his employment.

Despite these admissions, the appellants contend that the doctrine upheld by the weight of authority is to the effect that the owner of a vehicle is not liable for the injuries sustained by a person who has been invited by his employee, without his knowledge, and point out the fact that this Court accepted said doctrine in *Acosta* v. *Crespo*, 70 P.R.R. 223.

It is true that in said case, at pp. 232–3, we stated:

". . . If a pedestrian had been hit by the car while the chauffeur was driving it on such an errand, he could recover damages. But if the chauffeur takes along as his own guest someone whom

he does not need to assist him to accomplish his errand, the owner is not liable for injuries to the guest caused by the chauffeur's negligence in operating the car. 5 Blashfield, *supra,* § 3016, p. 148."

In fact, the general rule as set forth in the decisions is that a servant has no implied authority to invite or permit a third person to ride in a vehicle in his charge and that if in so doing, the invitee sustains injuries through negligence of the servant, the master is not liable, as the servant was not acting within the scope of his authority. *Wigginton Studio* v. *Reuter's Adm'r.,* 71 S. W. 2d 14; *Metropolitan Life Insurance Co.* v. *Gosney,* 101 F. 2d 167; *Erickson* v. *Foley,* 262 N. W. 177; *East Coast Freight Lines* v. *Mayor and City Council, etc.,* 58 A. 2d 290 (Md., 1948); *Liggett & Myers Tobacco Co.* v. *De Parcq,* 66 F. 2d 678 and Annotations in 62 A.L.R. 1167 and 74 A.L.R. 163. In other words, the doctrine of "apparent authority," as it applies to the relationship of principal and agent, is not applicable to cases of this nature. *Morris* v. *Dame Ex'r,* 171 S. E. 662; *Gruber* v. *Cater Transfer Co.,* 165 Pac. 491; *Cole* v. *Johnson Motor Co.,* 9 S. E. 2d 425; *O'Leary* v. *Fash,* 140 N. E. 282, and Annotation in 2 A.L.R. 2d 406.

As held in *East Coast Freight Lines* v. *Mayor and City Council, etc., supra,* p. 303: ". . . the doctrine of apparent authority is applicable only where the relation of employer and employee is that of principal and agent." It was also decided that "Although both relations rest in contract, in measuring the extent of an agent's authority, emphasis is more often placed upon the terms of the contract rather than in the case of a servant where the emphasis is ordinarily placed upon the nature of the employment. The distinction is of importance here where the inquiry is directed to the liability of the master for the tortious acts of a servant. In the case of an agent that liability often depends upon the apparent authority of the agent because, since it is his function to create primary obligations giving rise to primary

rights, the person with whom he deals representing his principal may justly complain if he is permitted by the principal to display an appearance of authority which has never in fact been granted him. In the case of a servant whose acts do not create, but violate, primary rights, and give rise to secondary obligations and remedial rights, appearances are of less importance because usually the third party is not misled by the master's representations of the servant's authority. In such case the course of employment is said to be the basis of liability. The fact that the servant is in the general employment of the master does not create an inference that a certain act done by him was in the scope of his employment. To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master. Mechem on Agency, § 36; Huffcut on Agency, § 5; American Law Institute, Restatement, Agency, § 228, comment (b)." Notwithstanding decisions to the contrary, the tendency of the decisions is in the foregoing sense. 5 Am. Jur. 729, § 394, and Annotations in 62 A.L.R. 1167 and 74 A.L.R. 163.

We think that the general rule must prevail in these cases in accordance with the liability established by § 1803 of the Civil Code, as amended by Act No. 120 of May 12, 1943, in connection with § 1802 of the same Code.[3]

The appellees maintain, however, that there is an excep-

---

[3] Section 1803, insofar as pertinent, provides:

"The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

". . . . . . .

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed *or on account of their duties.*" (Italics ours.)

tion to this general rule to the effect that if in these cases it is shown that the injury resulted from wanton, wilful, or reckless negligence in the operation of the vehicle, the owner is liable. It is true and this exception is set forth in 5 Blashfield, Cyclopedia of Automobile Law and Practice 149, § 3017, as follows:

"Notwithstanding the general rule laid down in the preceding section, it is settled by the weight of judicial decisions that, if after the unauthorized act of the servant and the violation of his duty to his master, and when acting in the general scope of his authority, he becomes guilty of wanton, willful or reckless negligence in the operation of the machine or vehicle in his charge and injuries result therefrom to his invitee or licensee, the master is liable therefor, such operation being regarded as done within the general scope of his authority."

Whether this exception to the general rule has been applied or not depend in innumerable cases on the special attendant circumstances and the manner in which the accident occurred. See the cases cited in footnotes 81 to 90, pp. 149–51 of 5 Blashfield, *op. cit.* and in the Annotations in 62 and 74 A.L.R., *supra.*

Even though it has been termed "reckless or wanton negligence," many authorities hold that it is an error to characterize it thus, for it is rather a reckless or wilful act or conduct. *Universal Concrete Pipe Co.* v. *Bassett*, 200 N. E. 843; *Union Trust Co.* v. *Detroit G. H. & M. Ry.*, 214 N. W. 166; *Weber* v. *Pinyan*, 70 P. 2d 183. Likewise, in a "Special Note" to comment (*d*) of § 282 in II Restatement of the Law of Torts 740 the difference between the one and the other concept, because of their different legal consequences, is stressed, for which reason reckless or wanton misconduct is defined, independent of that of negligence, in § 500, p. 1293, as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason

to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

In comment (*g*) to this Section negligence and carelessness are contrasted as follows:

"Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

The only case decided in this jurisdiction and in which the general rule was applied is *Cruz* v. *Soto Mayor et al.*, 32 P.R.R. 175, but we accepted therein the conclusion of the lower court to the effect that the person who sustained the damage was a trespasser upon getting on a truck without leave of the owner *or of the chauffeur* and that, as a consequence, under § 1804 (now 1803), the owner was not liable for the damages caused, although another defendant who had also been guilty of the negligence which caused the damage, could be liable.

The difficulty in applying the exception to the general rule in Puerto Rico is that we would be extending the limits of § 1803, which only renders liable the owner of an enter-

prise for the negligent acts of his employee "on account of his duties" to those personal acts of the employee—here the chauffeur's invitation to Juan Rivera to get in the truck— as if said personal acts formed part of the duties which the employee has to discharge in the course of his employment. It was neither alleged nor proved that the chauffeur's invitation to Juan Rivera to get in the truck was in order to perform any task for the benefit of the owner thereof. We must not, therefore, by judicial interpretation enlarge the scope of the master's liability beyond the provisions of § 1803, *supra*. Even in common law jurisdictions the tendency is to limit the liability of the owner of the vehicle in these cases. 5 Am. Jur., § 395, pp. 730–31; Annotations in 62 and 74 A.L.R. and in 2 A.L.R. 2d, *supra*.

This being our conclusion, we need not discuss the remaining errors assigned by the defendants, as well as the appeal taken by the plaintiffs since, as the lower court committed the first error, the judgment must be reversed and the complaint dismissed.

Mr. Justice Snyder, although not present at the hearing of this case, concurs in this opinion.