SARA ELENA LLORÉNS ORTIZ ET AL., demandantes y apelados, *v.* ISMAEL LOZADA y UNITED STATES FIDELITY & GUARANTY COMPANY, demandados y apelantes.

Núm. 10474.—*Sometido:* Diciembre 3, 1951. *Resuelto:* Marzo 26, 1952.

_____

(2) Los abogados que representaron a los obreros reclamantes no eran funcionarios del Departamento del Trabajo.

*Enrique Báez García,* abogado de los apelantes; *R. Hernández Matos,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Los demandantes, viuda e hijos de Andrés Pérez Graciani, demandaron en daños y perjuicios a Ismael Lozada y a United States Fidelity & Guaranty Company ante la corte de distrito, con motivo de un accidente de automóvil en el cual Pérez Graciani resultó muerto. Luego de un juicio en los méritos, la corte inferior dictó sentencia a favor de los demandantes por la suma de $10,000, más las costas y $500 para honorarios de abogado. El caso se encuentra ante nos en apelación contra dicha sentencia.

Para entender mejor los errores señalados por los apelantes es necesario que hagamos una breve reseña de los hechos según los halló probados la corte de distrito. El 17 de febrero de 1949 Juan Vélez Padilla, empleado del demandado Lozada, manejaba y conducía un camión de éste cargado con cañas de azúcar. La caña también era propiedad de Lozada. Vélez se dirigía a la Central Igualdad. Conducía el camión por la carretera insular núm. 2 en dirección a Mayagüez. Ésta era la ruta por la cual Vélez ordinaria y regularmente transitaba para este fin, cumpliendo órdenes de su patrono Lozada. Este viaje era el último que haría Vélez ese día transportando cañas de Lozada. No obstante, cuando Vélez llegó al kilómetro 189, hectómetro 9, en el tramo comprendido entre San Germán y Mayagüez, estimó que no llegaría a la Central antes de las 6 p.m. Toda vez que la Central no recibía cañas después de dicha hora, Vélez estimó que lo mejor y más conveniente para su patrono era estacionar el camión en la carretera y continuar el viaje por la mañana temprano. Por consiguiente, estacionó el camión a las siete de la noche en la desembocadura de una curva, yéndose a dormir a su casa cercana a dicho sitio.

En el sitio en que se estacionó el camión la carretera medía 37 pies de ancho. En la parte embreada medía 21 pies. El camión estaba estacionado a la derecha, pero ocupaba una porción considerable de la parte embreada de la carretera en dicho sitio. Tanto la goma delantera izquierda como las traseras izquierdas descansaban en la parte embreada de la carretera. El camión no tenía luces de clase alguna y formaba un "cuerpo opaco", a lo que ayudaba y contribuía el hecho de que el camión quedó pegado a unos arbustos de pavonas bastante crecidos y frondosos en forma tal que su follaje se confundía con las cañas de azúcar de que estaba cargado el camión.

Durante esa noche se llevaba a efecto el último y decisivo juego de pelota de la temporada del 1948–1949 entre los equipos Santurce y Mayagüez para el campeonato de Puerto Rico. Pérez Graciani, Remy Maldonado y varios otros amigos escuchaban en Guayanilla por radio las incidencias del juego. Cuando se anunció que Mayagüez había obtenido la victoria en el desafío, Pérez y sus amigos decidieron ir a Mayagüez aquella noche a celebrar. Salieron de Guayanilla poco después de las diez de la noche. Maldonado proveyó y conducía el sedán Ford en que viajaban. El automóvil pertenecía a F. Dávila & Co., con quien Maldonado trabajaba. Pérez Graciani iba en el asiento delantero y otros tres en el trasero.

Entre las 11 y 12 de la noche, mientras Maldonado conducía el automóvil por la derecha a velocidad moderada y con luces, fué deslumbrado momentáneamente por las luces altas de un automóvil que venía en dirección contraria. Maldonado echó su automóvil hacia la derecha para evitar el choque con el automóvil que venía. Al virar de nuevo hacia la izquierda para tomar el centro de la carretera, chocó súbitamente con la esquina izquierda trasera del camión Ford allí estacionado. A consecuencia del choque Pérez Graciani resultó muerto.

■■ El primer señalamiento es que la corte inferior cometió error de derecho al resolver que al estacionar el camión en la carretera, el chófer del demandado Lozada actuó dentro de las atribuciones de su empleo, resultando con ello que el demandado Lozada fuera responsable de su negligencia. Los apelantes descansan principalmente en la regla establecida en *Acosta* v. *Crespo*, 70 D.P.R. 239, 248:

"El dueño de un automóvil no es responsable por daños ocasionados por la negligencia de un chófer empleado suyo si se establece mediante prueba que mientras manejaba el vehículo el chófer se apartó del trabajo para realizar algún propósito propio ajeno a los deberes de su empleo. *Ojea* v. *Drug Co. of P. R.*, 40 D.P.R. 652; *Burgos* v. *Sobrinos de Villamil*, 41 D.P.R. 84; *Ramírez* v. *Marín*, 42 D.P.R. 858; *Graniela* v. *Yolande, Inc.*, [65 D.P.R. 107]; *Annotation*, 122 A.L.R. 858; *Maas* v. *Harvey*, 8 S.2d 683 (La., 1942); *Barrett* v. *Employers' Liability Assur. Corporation*, 118 F.2d 799 (C.A. 5, 1941); *R. L. Jeffries Truck Line* v. *Brown*, 197 S.W.2d 904 (Ky., 1946); *Baker Driveaway Co.* v. *Clark*, 162 F.2d 181 (C.A. 4, 1947); 1 *Restatement, Agency*, secs. 235, 238; 5 Blashfield, *Cyclopedia of Automobile Law and Practice*, edición permanente, sec. 3011, pág. 139. *Cf. Maysonet* v. *Sucn. de Arcelay*, [70 D.P.R. 167]." (Corchetes nuestros.)

Los apelantes sostienen que Lozada le había dado instrucciones a su chófer para que usara el camión del primero exclusivamente para entregar cañas de la finca de Lozada a la Central Igualdad; que su chófer se había apartado de su trabajo para realizar un propósito suyo cuando estacionó el camión en la carretera y se fué a dormir esa noche a su casa; y que, por consiguiente, la negligencia del chófer no podía atribuirse a su patrono.

Sin embargo, la prueba creída por la corte de distrito demuestra que éste era el cuarto viaje que ese día hacía el chófer llevando cañas en el mismo camión; que cuando llegó a la carretera comprendió que no podría arribar a la Central antes de las seis de la tarde, hora en que la Central dejaba de recibir cañas; que no llevó el camión a la grúa

de la finca porque le era difícil virarlo en la carretera; que decidió que lo mejor para su patrono sería estacionar el camión cerca de su casa con el fin de entregar la caña a la Central temprano al otro día.

Bajo estas circunstancias no podemos convenir que al estacionar el camión el chófer se había apartado de las atribuciones de su empleo para realizar un propósito exclusivamente suyo. Por el contrario, su fin primordial al así actuar fué estar en situación de servirle a su patrono al día siguiente. El hecho de que también durmió en su casa no altera el resultado. Si bien sus motivos pudieron ser combinados, si su actuación en parte cumplió con los fines de su empleo, su negligencia al estacionar el camión en la forma antes descrita debe imputarse a su patrono. Véanse *Vigio* v. *Cartagena*, 71 D.P.R. 710 y las autoridades citadas a las páginas 713, 714; *Maysonet* v. *Sucn. Arcelay*, supra. *Cf. Rivera* v. *Maldonado*, 72 D.P.R. 479.

Una vez que resolvemos que al estacionar el camión el chófer cumplía algún propósito de su patrono, podemos, bajo las circunstancias de este caso, ignorar el testimonio del patrono al efecto de que su chófer siempre tenía órdenes de estacionar el camión por las noches en la grúa y nunca dejarlo que pasara la noche en la carretera. Permitir tal defensa equivaldría, por ejemplo, a resolver que un patrono nunca puede considerarse responsable por la negligencia de su empleado al conducir un automóvil a mayor velocidad porque aquél le había dado instrucciones de que lo condujera a velocidad moderada. Si como aquí ocurre un empleado actúa dentro de las atribuciones de su empleo, su patrono es responsable de sus actos negligentes aunque éste le haya prohibido realizar los actos específicos en cuestión. Según lo expresa Prosser en su obra *Torts*, a la pág. 476, si "la conducta es sencillamente una forma prohibida de llegar al resultado autorizado, el patrono no puede escapar a la responsabilidad aun mediante instrucciones específicas a su empleado". De otra forma, el patrono fácilmente podría

inmunizarse contra responsabilidad por todos los posibles actos futuros de negligencia de su agente meramente prohibiéndole con anterioridad el realizar actos específicos de negligencia.

■■ El segundo señalamiento es que la corte inferior cometió error al no resolver que Maldonado fué responsable de negligencia contribuyente al conducir el automóvil ocupado por Pérez.  Al dejar de ponerle al camión una luz trasera por la noche, en violación del artículo 12 (*g*) de la Ley núm. 279, Leyes de Puerto Rico, 1946, el chófer del demandado Lozada cometió un acto de negligencia *per se*.  Pero los apelantes descansan en el principio de que si las circunstancias eran tales que Maldonado mediante el cuidado razonable pudo ver el camión a tiempo para evitar el choque, el no haber tenido tal cuidado razonable exige que se concluya que fué culpable de negligencia contribuyente.  *Portalatín* v. *Alers*, 69 D.P.R. 747; *Restatement, Torts*, Vol. II, sec. 474, *Comment* (*b*), pág. 1248.  *Cf. Paniagua* v. *Autoridad de Transporte*, 69 D.P.R. 130, opinión disidente.

La dificultad en este caso para los apelantes estriba en que los hechos que halló probados la corte de distrito no justifican la aplicación del principio antes enunciado.  En el caso de *Portalatín* se resolvió que el demandante era culpable de negligencia contribuyente porque conducía su automóvil a velocidad excesiva en un día lluvioso, eliminando con ello la posibilidad de poder ver el obstáculo a tiempo.  Aquí Maldonado guiaba a velocidad moderada, el obstáculo se confundía con el paisaje, y no lo vió a tiempo porque su atención justificadamente se distrajo por un momento cuando fué deslumbrado por las luces del automóvil que se aproximaba.  Bajo estas circunstancias, aun la opinión disidente en el caso de *Paniagua* admite a la página 135 que no existe negligencia contribuyente.  En virtud de estos hechos, no podemos decir que Maldonado cometiera ningún acto de negligencia que contribuyera a la causa del accidente.

■ El tercer señalamiento es que la corte inferior cometió error al no imputarle la negligencia de Maldonado a Pérez Graciani por el fundamento de que ambos iban en una empresa común. Nunca llegamos a esta cuestión. Toda vez que Maldonado no fué negligente, el problema de imputarle su negligencia a Pérez Graciani sobre la teoría de empresa común no puede surgir. *Ramos* v. *García*, 62 D.P.R. 411, 414. *Cf. Paniagua* v. *Autoridad de Transporte*, supra, págs. 135–36, opinión disidente; 4 Blashfield, *Cyclopedia of Automobile Law and Practice*, Parte I, edición permanente, sec. 2372, página 492 *et seq.*

■ El cuarto error señalado es que la sentencia es excesiva. No encontramos base para decir que la corte inferior abusara de su discreción al conceder daños en este caso ascendentes a $10,000.

*La sentencia de la corte de distrito será confirmada.*