JUAN RAMÓN ACOSTA VARGAS Y OTROS, demandantes y recurridos, *v.* JUAN ÁNGEL TIÓ y UNITED STATES FIDELITY AND GUARANTY COMPANY, demandados y recurrentes; FLAVIO IRIZARRY RODRÍGUEZ Y OTROS, demandantes-recurrentes y recurridos, *v.* ABEL ORTIZ CANCEL Y OTROS, demandados-recurridos y recurrentes.

*Números:* 393, 394.     *Resueltos:* 11 de febrero de 1963.

*Enrique Báez García,* abogado de los demandados-recurrentes en el caso Núm. 393 y de los demandados-recurridos y recurrentes en el caso Núm. 394; *Luis A. Negrón López,* abogado de los demandantes-recurridos en el caso Núm. 393; *Yamil Galib Frangie* y *Luis María Capó,* abogados de los demandantes-recurrentes y recurridos en el caso Núm. 394.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Un muerto y tres heridos, uno de ellos de gravedad, fue el balance trágico de un accidente ocurrido en 7 de marzo de 1959 alrededor de las ocho de la noche, en la carretera que conduce de Lajas al poblado de La Parguera, cuando una guagua "pisicorre" conducida por Flavio Irizarry chocó con la parte posterior de un camión de arrastre, propiedad del demandado Juan Ángel Tió, que se encontraba detenido a la orilla de dicha vía pública.  Los familiares del occiso y los lesionados incoaron sendas demandas contra el dueño del camión y su compañía aseguradora en reclamación de los daños recibidos, y después de celebrado el juicio oral de rigor para cuyo fin se consolidaron los pleitos, el tribunal de instancia determinó que había mediado negligencia tanto del conductor de la guagua—la cual imputó al causante de los demandantes y a los demás reclamantes—como el chófer del camión de arrastre, y al dictar sentencia redujo la indemnización concedida en la proporción correspondiente.

Para los fines de los recursos de revisión entablados las partes no incluyeron la transcripción de la evidencia presentada en el expediente de revisión—véanse las Reglas 54.1, 54.2 y 54.3 de las de Procedimiento Civil de 1958, 32 L.P.R.A. (Supl. 1962), págs. 176–177—por lo que hemos de presumir que aceptan sin reservas la situación fáctica determinada por el magistrado de instancia.  En lo pertinente lee así:

"1.  El día 7 de marzo de 1959 el demandante Flavio Irizarry, quien para esa fecha era un joven soltero de 25 años

de edad, chocó mientras manejaba una guagua pisicorre, che-vrolet, del año 1953, de su propiedad, con la parte trasera de un *truck-trailer* propiedad del demandado Juan Ángel Tió que se encontraba detenido en el sitio de la carretera que conduce de Lajas a La Parguera . . .

"2.  El accidente ocurrió como a eso de los 8 de la noche y en esos momentos acompañaban a dicho demandante en esa guagua el Sr. Hermenegildo Acosta, quien iba al lado del chófer en el asiento delantero y resultó muerto, y en el asiento de atrás iban los señores Segundo Cruz, Nelson Irizarry y Eta-nislao Rodríguez.  El grupo de personas que iba en esa gua-güita habían estado juntos [*sic*] desde las 4 ó las 5 de la tarde en distintos cafetines tomando cervezas, incluyendo específica-mente al chófer del vehículo, el demandante Flavio Irizarry, quien se había tomado varias cervezas con sus amigos.

"3.  El truck-trailer contra el cual chocó el demandante Flavio Irizarry es el que aparece fotografiado en las fotografías que constituyen los exhibits 2 y 3 de los demandantes.  Como puede verse en dichas fotografías la caja era una de acero, con la parte de atrás completamente cerrada hacia arriba, y al ocurrir el accidente dicho trailer estaba cargado con 22 tone-ladas de caña.  El truck estaba estacionado mirando hacia el sur, en la misma dirección en que caminaba la guagua del demandante, con sus ruedas derechas fuera de la brea y sus ruedas izquierdas dentro de la brea, quedando la caja bastante metida dentro de la mitad derecha de la brea, teniendo el ancho de la brea en ese sitio alrededor de 19 ó 20 pies.

"4.  El trailer antes mencionado había sido detenido en ese sitio como a las cinco de la tarde por su chófer, quien era un empleado del demandado Juan Ángel Tió, y quien en ese momento actuaba como tal empleado de dicho demandado transportando caña propiedad de dicho demandado en ese truck, por instruc-ciones del mecánico de don Juan Ángel Tió, ya que el truck había desarrollado un fallo en su motor mientras iba camino de la Central Guánica.  El truck fue detenido en el lado derecho de la carretera mirando hacia el sur, ocupando el trailer la mayor parte de la mitad derecha de la brea, a pesar de que sólo unos pocos metros más adelante había una grúa y sitio de carga del demandado donde el truck pudo haber sido esta-cionado fuera de la carretera para hacerle las reparaciones necesarias.

266

"5. Al ocurrir el accidente el truck estaba estacionado en ese sitio sin ninguna luz prendida, aunque sí había prendida una bombilla exterior en la casita que puede verse en la fotografía que constituye el exhibit 10 de los demandantes que daba un poco de luz sobre la parte trasera del trailer, y el accidente que dio base para estas reclamaciones ocurrió debido al hecho de que el demandante Flavio Irizarry no se percató a tiempo para frenar de la presencia de este truck en ese sitio, y cuyo vehículo ocupaba casi toda su derecha en la dirección en que conducía su guagüita el demandante Flavio Irizarry esa noche, habiendo contribuido a restarle visibilidad al demandante Flavio Irizarry de la presencia de ese truck en la carretera el hecho de que en los momentos en que Flavio Irizarry se acercaba al truck dicho demandante quedó momentáneamente deslumbrado por las luces altas de otro vehículo que cruzaba en ese instante en dirección contraria por el lado del trailer.

"6. A juzgar por la fuerza del impacto, es inescapable la conclusión de que en los momentos en que ocurrió este accidente el demandante Flavio Irizarry debió haber estado conduciendo su guagua a bastante velocidad, o que de lo contrario, de haber ido éste a velocidad moderada, dicho demandante ha debido estar en esos momentos completamente distraido o con su vista y sus sentidos bastante embotados por la influencia del licor. (Creemos lo más probable que estas tres circunstancias hubiesen ocurrido, ya que no hubo prueba de que el demandante Flavio Irizarry hubiese aplicado los frenos para detener su vehículo antes de chocar con el truck.) Al ocurrir el impacto la guagüita que guiaba el demandante Flavio Irizarry quedó con todo el bonete metido debajo de la parte trasera de la caja del truck, quedando, según puede verse en el Exhibit D, con todo su frente totalmente destrozado, habiendo la fuerza del impacto doblado hacia adentro la barra de acera que puede verse en la fotografía que constituyen los exhibits 3 y 4 de la parte demandante, y cuya barra sirve en esos trucks para llevar la goma de respuesta, habiendo además el impacto movido ese truck con esa carga de 22 toneladas de caña como pie y medio hacia el frente.

"7. El demandante Flavio Irizarry declaró que al ocurrir el accidente iba como a 30 millas por hora y que su guagua tenía buenas luces prendidas, y que a pesar de que redujo un poco la velocidad al ver venir el carro en dirección contraria con sus luces grandes prendidas, en ningún momento vio el truck antes del impacto, lo cual implica que tampoco trató de

frenar para evitar la colisión. Sin embargo, otro de los testigos que iba en esa guagua sentado en el asiento trasero, y cuya declaración nos mereció crédito, declaró que él se percató de la presencia del truck en la carretera cuando estaban como a 50 metros de distancia, y en la inspección ocular realizada por este Juez más o menos a la hora en que ocurrió este accidente, pudimos comprobar, manejando nuestro propio automóvil a una velocidad de alrededor de 30 millas por hora (nuestro carro es un Ford de 5 años de uso, de luces no muy potentes.), que al acercarnos a ese truck en ese sitio donde ocurrió el accidente viniendo un vehículo en dirección contraria con las luces grandes encendidas la parte trasera del truck, con todas sus luces apagadas, quedó visible cuando estábamos como a 25 metros de distancia del mismo, habiendo podido este Juez detener fácilmente su vehículo frenando para evitar chocar con el truck."

Consideradas las determinaciones de hecho transcritas, el tribunal a quo formuló las siguientes conclusiones de derecho:

"1.    Considerados los hechos anteriormente expuestos, somos de opinión que el accidente ocurrido en este caso se debió tanto a la negligencia del chófer del truck propiedad del demandado Juan Ángel Tió que lo dejó estacionado en esta carretera sin luces prendidas, como a la negligencia incurrida por el propio demandante Flavio Irizarry al manejar esta guagua de su propiedad bajo los efectos del licor a velocidad exagerada o sin estar atento a los obstáculos que pudiesen surgir en la carretera, sin haber éste reducido su velocidad lo suficiente al ver venir este vehículo en dirección contraria con sus luces grandes encendidas para poder haber tenido tiempo de frenar al percatarse de la presencia de este truck en la carretera y evitar el accidente.

"Aunque es obvio que el estacionamiento de este truck-trailer en este tramo de carretera sin luces constituyó un acto de negligencia *per se, artículo 12(g)* de la Ley 279 de 5 de abril de 1946, según enmendada; *Lloréns* v. *Lozada,* 73 D.P.R. 271, 277, somos de opinión que de haber venido el demandante Flavio Irizarry conduciendo su guagua por esa carretera completamente recta a velocidad moderada, sin estar bajo las influencias del licor y en actitud alerta a cualesquiera obstáculos que pudieran surgir en la carretera, y de haber dicho demandante tomado la precaución de reducir en forma considerable

la velocidad de su vehículo al enfrentarse con esas luces de este otro carro que venía en dirección contraria y que lo deslumbraron, dicho demandante hubiese podido percatarse de la presencia de este truck sin luces en esa carretera con tiempo suficiente para poder frenar y evitar el accidente, o por lo menos disminuir considerablemente la fuerza del impacto. (El hecho de que el demandante Flavio Irizarry no hubiese llegado a frenar su vehículo, y su declaración de que en ningún momento vio el truck son prueba incontrovertible de que dicho demandante o iba demasiado ligero, o que estaba completamente distraído al ocurrir el accidente.) Y nos parece claro que al no observar el demandante estas normas de seguridad exigidas por el sentido común y las doctrinas judiciales, dicho demandante incurrió en negligencia contribuyente, siendo éste tan responsable como el demandado de los daños que resultaron de la ocurrencia de este accidente. 5A Am. Jur. 434, 436, sec. 332; *Paniagua* v. *Autoridad de Transporte,* 69 D.P.R. 130; *Portalatín* v. *Alers,* 69 D.P.R. 747.

"2. Habiendo la prueba demostrado que el occiso Hermenegildo Acosta había estado tomando licor con el demandante Flavio Irizarry y los otros acompañantes de éste desde por la tarde, es claro que la negligencia contribuyente de Flavio Irizarry es igualmente imputable al occiso Hermenegildo Acosta, ya que hay base suficiente en la prueba para poder válidamente concluir que al ocurrir este accidente Flavio Irizarry manejaba esa guagua en forma descuidada debido en parte a la influencia del licor que habían tomado juntos desde por la tarde, teniendo el occiso pleno conocimiento de ese hecho, *Acosta* v. *Crespo,* 70 D.P.R. 239, 250, debiendo reducirse la cuantía de la indemnización que tienen derecho a recibir los familiares de Hermenegildo Acosta (todos estos demandantes familiares de Hermenegildo Acosta tienen derecho a ser indemnizados. *Vázquez* v. *Pueblo,* 76 D.P.R. 594; *Hernández* v. *Fournier,* 80 D.P.R. 93) en proporción a su propia negligencia contribuyente y la del demandante Flavio Irizarry, cuya negligencia contribuyente hemos estimado de igual magnitud que la negligencia de la parte demandada.

"3. En vista de las anteriores conclusiones en cuanto a la magnitud de la negligencia contribuyente incurrida por Flavio Irizarry y el occiso Hermenegildo Acosta, procede que se reduzca la cuantía de la indemnización que tienen derecho a recibir los demandantes en un 50%. Art. 1802 del Código Civil."

# I

En los recursos ante nuestra consideración ambas partes recurrentes impugnan la adjudicación del tribunal de instancia, el cual, en cuanto a la causa del daño, determinó la existencia de concurrencia de faltas, y pretenden que, bajo su interpretación particular de los hechos, se les libere de toda culpa con la consecuencia inevitable de colocar la responsabilidad total sobre la parte contraria. Antes de considerar estos planteamientos es conveniente que precisemos los actos negligentes que se atribuyen a cada uno de ellos. Al conductor del camión de arrastre, el estacionarlo sin luces en forma tal que ocupaba la mayor parte del carril derecho de la zona de rodaje de una vía pública, a pesar de disponer a corta distancia de un sitio para su estacionamiento que no entrañaba una situación de peligro potencial para los otros vehículos que por dicha vía transitaban; al conductor de la guagua, el conducir bajo los efectos del licor a velocidad exagerada o en forma atolondrada, sin estar atento a los obstáculos a que tuviera que enfrentarse, o, el no haber reducido la marcha al ser deslumbrado por la luz proyectada por otro vehículo que caminaba en dirección opuesta con sus luces grandes encendidas, actuación que le impidió disponer de tiempo suficiente para frenar y evitar la colisión con el camión estacionado, o cuando menos, aminorar la fuerza del impacto.

■ 1. (a) Apoyándose en la redacción de la parte inicial del segundo párrafo de la primera conclusión de derecho formulada por el tribunal a quo (ante, págs. 267 y 268), los demandados-recurrentes insisten en que la causa próxima del accidente fue la conducta del conductor de la guagua, quien ha debido advertir a tiempo la presencia del camión estacionado y tomar las precauciones necesarias para evitar el choque. Una lectura en conjunto de todas las determinaciones de hecho y las conclusiones de derecho nos llevará al inevitable convencimiento de que, a pesar de la desafor-

tunada redacción de este fragmento que se entresaca por la parte demandada, en todo momento el juez a quo entendió que en la causa del accidente intervinieron faltas de ambos conductores. Tanto es así que el primer párrafo de la misma conclusión invocada alude en forma inequívoca a que el accidente se debió "tanto a la negligencia del chófer del truck propiedad del demandado Juan Ángel Tió, que lo dejó estacionado en esta carretera sin luces prendidas, como la negligencia incurrida por el propio demandante Flavio Irizarry . . ." Es más, la impresión que hemos obtenido es que el fragmento indicado respondió al propósito de distinguir el caso de autos del de *Lloréns* v. *Lozada*, 73 D.P.R. 271 (1952), en donde nos negamos a sostener que el conductor de un automóvil que embistió un camión estacionado de noche, sin luz en su parte posterior para advertir su presencia, incurrió en negligencia contribuyente porque "mediante el cuidado razonable pudo ver el camión a tiempo para evitar el choque" (a la pág. 277), ya que las circunstancias concurrentes—manejaba a velocidad moderada, el camión se confundía con el paisaje y no pudo advertirlo a tiempo porque su atención fue justificadamente distraída por las luces de otro vehículo que se aproximaba—no justificaban la aplicación de tal regla. En el presente caso, contrario al de *Lloréns*, el juez de instancia precisamente determinó que estaban presentes las circunstancias que permitían atribuirle conducta imprudente al chófer de la guagua—conducir a velocidad exagerada o en forma atolondrada, bajo los efectos del licor. Es por ello que a continuación de la parte del párrafo en que con tanto ahinco descansan los demandados, el tribunal manifiesta que la inobservancia por el conductor de la guagua de las normas de seguridad exigidas por el sentido común y la jurisprudencia constituye conducta negligente, "siendo éste tan responsable como el demandado de los daños que resultaron de la ocurrencia de este accidente." *Portalatín* v. *Alers*, 69 D.P.R. 747 (1949) y la

opinión disidente en *Paniagua* v. *Autoridad de Transporte*, 69 D.P.R. 130 (1948), en forma alguna sostienen la posición de los demandados-recurrentes para que se les exonere de responsabilidad, pues en ambos la omisión del conductor de un vehículo de advertir la presencia de otro vehículo estacionado sin luces, se caracteriza como negligencia contribuyente, pero no como la única causa del accidente. Cfr. *Carrio* v. *Compañía Insular de Transporte*, 49 D.P.R. 41 (1935).

■ (b) Insisten también los demandados en que se cometió error al atribuirle negligencia, pues aun aceptando que el camión se encontraba estacionado sin luces, se estableció que una bombilla exterior de una pequeña casa situada en el lado opuesto de la carretera "daba un poco de luz sobre la parte trasera del trailer". Pretender con ello que se les libere de toda responsabilidad, a pesar de la expresión enfática en la opinión de *Lloréns* al efecto de que constituye negligencia *per se* el dejar de ponerle a un camión una luz en la parte posterior por la noche, en violación del Art. 12(g) de la Ley Núm. 279 de 5 de abril de 1946, 9 L.P.R.A. sec. 182,(¹) es ir demasiado lejos. *Pueblo* v. *Vargas*, 30 D.P.R. 513 (1922), refiriéndose al Art. 8(a) de la Ley Núm. 75 de 13 de abril de 1916 (Leyes, pág. 144), similar en su redacción al Art. 12(g) mencionado, señala que la ley no sólo ordenó que se tomara la medida de proveer luces suficientes, sino que expuso la razón para ello—"[l]o natural es que desde el mismo automóvil parta la luz a fin de que todas las personas se den cuenta de que está allí, en la

---

(¹) "Después de la puesta del sol no se dejará un vehículo de motor estacionado en un camino público sin dotarlo de luces suficientes, visibles en todas direcciones, para evitar peligros a las personas que usaren dicho camino . . ."

La disposición vigente, Sec. 5-709(a) de la Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. (Supl. 1962), sec. 1019, pág. 282, lee: "Ninguna persona podrá estacionar de noche un vehículo en una vía pública, cuando la misma careciere de alumbrado público, y dicho vehículo tuviere sin encender sus luces de estacionamiento y sus luces posteriores y cualesquiera otras luces que exigiere para dicho fin el Secretario por virtud de las disposiciones de esta ley y sus reglamentos."

calle o camino"—y que, por tanto, si desde otro lugar se irradia *"luz bastante"* para hacer visible el automóvil en todas direcciones, entonces el propósito de la ley queda cumplido y no se comete infracción alguna.([2])   Como se observará inmediatamente, y aun presumiendo que esta opinión en una causa para determinar responsabilidad criminal fuere aplicable, la situación de hechos es distinta, pues allí se alude a que se proyecte "luz bastante"—se trataba de un automóvil estacionado en la zona urbana, cerca de un teatro y en una calle alumbrada de la población—mientras que en el presente caso todo cuanto puede afirmarse es que una bombilla colocada en una pequeña casita vecina al lugar arrojaba "un poco de luz" sobre un camión estacionado en plena zona rural.   Además, un examen de las fotografías admitidas en evidencia lleva a la inescapable conclusión de que los propósitos de la ley no se satisfacían cumplidamente con la débil y tenue luz que podía arrojar—a través de la carretera—la pequeña bombilla de la casita contigua.   Las dimensiones del camión de arrastre y la forma de su construcción en la parte posterior (Exh. 2 demandante), unidas al lugar en que se encontraba colocada la bombilla—prácticamente razante con el techo que tenía una pequeña inclinación descendente hacia el frente y que le servía de pantalla (Exbs. 13 demandante y C demandados)—así lo corroboran.

Es bueno advertir además que el Art. 8(a) bajo el cual se resolvió *Pueblo* v. *Vargas*, supra, no contiene una disposición específica como el Art. 12(g), vigente a la fecha de los hechos que consideramos, que después de exigir que se dote de luces suficientes a un vehículo estacionado de noche, específicamente requiere a continuación, como complemento, que "en aquellos caminos públicos que tuvieren suficiente paseo a sus lados para ello, el vehículo deberá estacionarse fuera del borde de la pavimentación".   Y hemos

---

([2]) Véase, *Arreche* v. *P. R. Ry. Lt. & Power Co.*, 40 D.P.R. 299, 302–303 (1929).

visto que según las determinaciones de hecho, el camión estaba estacionado en forma tal que invadía prácticamente el carril derecho de la carretera.([3])

■ 2. (*a*) Por su parte, el demandante-recurrente Flavio Irizarry Rodríguez, conductor de la guagua, insiste en que la determinación de que incurrió en conducta negligente es insostenible por descansar en un experimento realizado por el propio juez sentenciador en el lugar de los hechos, mediante el cual se intentó reproducir las circunstancias que concurrieron al ocurrir el accidente. En *Cedeño* v. *Tropical City Industries*, 71 D.P.R. 626 (1950), al indicar que la admisión como prueba del resultado de un experimento efectuado fuera del recinto de la corte es discrecional del tribunal, establecimos que es necesario que el mismo se haya realizado bajo circunstancias sustancialmente iguales o similares a las que

---

([3]) Llamamos la atención a las disposiciones del Reglamento General de Tránsito para Carreteras Estaduales aprobado en 14 de noviembre de 1957, que regía para la fecha del accidente, en cuanto se refiere al estacionamiento en carreteras rurales y de vehículos averiados, 9 R. & R. P. R. secs. 187–6 y 187–7:

"187–6. *Parar, detener o estacionar en carreteras rurales*

"(a) Ninguna persona podrá parar, detener o estacionar un vehículo con o sin ocupantes, en el pavimento o superficie de rodaje de una carretera estatal localizada en una zona rural cuando sea posible detener, parar o estacionar dicho vehículo fuera de la superficie de rodaje de la carretera. En todo momento se dejará suficiente espacio en la carretera al lado opuesto del vehículo estacionado para el paso de los demás vehículos y tal vehículo estacionado será visible desde una distancia de no menos de sesenta (60) metros de cada dirección de la carretera.

"(b) Esta sección no se aplicará al conductor de un vehículo que se averíe, cuando se halle en el pavimento o superficie de rodaje de la carretera, de tal manera y a tal extremo que resulte imposible remover dicho vehículo de la superficie de rodaje.

"187–7. *Vehículos averiados*

"Cualquier vehículo que sufra un desperfecto en una carretera estatal y no pueda continuar su marcha, será removido de dicha carretera en un período de tiempo no mayor de una (1) hora."

De la prueba surge que la parte demandada incurrió en las siguientes violaciones: (*a*) estacionamiento del camión en la superficie de rodaje siendo posible detenerlo fuera del pavimento; (*b*) no remover el vehículo averiado dentro del período de una hora de haberlo estacionado.

existían en el momento de ocurrir el hecho en controversia (*Publix Cab Co.* v. *Colorado Nat. Bank*, 338 P.2d 702 (Colo. 1959); *Odell* v. *Frueh*, 304 P.2d 45 (Cal. 1957)), aunque no tienen que ser idénticas (*Beresford* v. *Pacific Gas & Electric Co.*, 290 P.2d 498 (Cal. 1955)). Véase, Anotación, *Admissibility of experimental evidence to show visibility or line of vision*, 78 A.L.R.2d 152 (1961). Un reparo frecuente a la admisión de esta prueba experimental es que la actitud mental de la persona que lleva a cabo el experimento es necesariamente diferente a la de los protagonistas de los hechos, ya que se encuentra expectante para la observación de un hecho específico conocido, o cuando menos, menos atento a otros incidentes u objetos que normalmente podrían retener su atención si no estuviese previamente prevenido. *Complete Auto Transit* v. *Floyd*, 249 F.2d 396, 399 (C.A. 5, 1957), cert. den., 356 U.S. 949 (1958); *Potts* v. *Bird*, 27 P.2d 745, 748 (Colo. 1933); *Palmer* v. *Oregon Short Line R. Co.*, 98 Pac. 689, 700 (Utah, 1908); *City of Ord* v. *Nash*, 69 N.W. 964, 966 (Neb. 1897); *Handley* v. *Erb*, 41 N.E.2d 222 (Ill. 1942); *Lane* v. *Hampton*, 87 S.E.2d 803 (Va. 1955); contra, *Norfolk & W. Ry. Co.* v. *Henderson*, 111 S.E. 277 (Va. 1922); *Carpenter* v. *Kurn*, 157 S.W.2d 213 (Mo. 1941); *Griggs* v. *Kansas City Rys. Co.*, 228 S.W. 508 (Mo. 1920). Precisamente se apunta que el juez desde el inicio mismo del experimento tenía conocimiento previo del lugar exacto en donde se encontraba estacionado el camión y de que eventualmente sería deslumbrado por las luces de un automóvil que se dirigía en dirección contraria. En verdad que el resultado de este experimento es de escaso valor probatorio. Sin embargo, de haberse cometido el error señalado, ello no sería motivo bastante para dejar sin efecto la determinación de hechos impugnada, ya que la misma no se funda únicamente en el experimento efectuado según puede apreciarse de una lectura en conjunto de todos los hechos que se estimaron probados, y porque además, la culpa que se le imputa al recurrente no consistió solamente en no adver-

tir oportunamente la presencia del camión estacionado, sino también conducir en forma atolondrada, posiblemente a una velocidad exagerada, y lo que es más decisivo, bajo la influencia de bebidas alcohólicas.

■ (*b*) Finalmente, y para disponer de este aspecto de los recursos, carece de méritos la pretensión de que los otros demandantes-recurrentes—los pasajeros que resultaron lesionados—no incurrieron en negligencia. Concurren todas las circunstancias que se especifican en *Acosta* v. *Crespo*, 70 D.P.R. 239, 250 (1949), para establecer que una persona que acompañe a un conductor es negligente si: (1) el chófer estaba ebrio o bajo la influencia del licor a tal extremo que lo hacía un conductor descuidado e incompetente; (2) el pasajero sabía o debió saber la condición del chófer; y (3) el estado de embriaguez o el conducir bajo la influencia del licor fue un factor que contribuyó a la ocurrencia del accidente. Véanse, por la similaridad con el presente caso, *Todd* v. *Jackson*, 283 F.2d 371 (CA, DC 1960); *Warner* v. *Home Indemnity Co.*, 123 So.2d 518 (La. 1960); *Elba* v. *Thomas*, 59 So.2d 732 (La. 1952); *Enos* v. *Montoya*, 322 P.2d 472 (Cal. 1958); *Arrington* v. *Graham*, 124 S.E.2d 199 (Va. 1962).

## II

■ Con el propósito expreso(4) de eliminar la aberración judicial resultante de la aplicación y consagración de la doctrina de negligencia contribuyente como defensa absoluta en una reclamación de daños y perjuicios,(5) la Asamblea Legislativa aprobó la Ley Núm. 28 de 9 de junio de 1956, que enmendó el Art. 1802 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 5141, e incorporó la doctrina conocida como negligencia comparativa. Al efecto se adicionó una oración

---

(4) *Diario de Sesiones*, 1956, págs. 371 y 1320.

(5) Para un examen de la situación en Puerto Rico con motivo de la aplicación de esta doctrina de negligencia contribuyente, véanse, *Irizarry* v. *Pueblo*, 75 D.P.R. 786, 826–831 (1954) y *Ramos* v. *Carlo*, 85 D.P.R. 353 (1962).

al referido artículo. "La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

En vista de la amplia exposición sobre los orígenes y desarrollo de la doctrina de negligencia comparativa que aparece en la opinión emitida por el Juez Asociado Señor Ortiz en *Irizarry* v. *Pueblo*, 75 D.P.R. 786, 795–835 (1954), no es necesario que entremos en estos detalles que, de otra forma, serían indispensables para una mejor consideración de este caso.([6]) Nos limitaremos a discutir la única cuestión que realmente plantean los demandados-recurrentes relacionada con la fórmula adecuada para proceder al reparto proporcional de los daños una vez establecida la concurrencia de culpas.([7])

■ Los demandados-recurrentes formulan el planteamiento en la alternativa. Sugieren que como a su juicio la negligencia de los demandantes, especialmente la del conductor de la guagua fue crasa, y la atribuible, si alguna, al

([6]) Para los interesados en la materia, pueden verse Velázquez, *Anotaciones al Nuevo Artículo 1802 del Código Civil*, 17 Rev. C. Abo. P. R. 7 (1956); Estrella, *La Responsabilidad Civil Extracontractual ante el Repudio de la "Contributory Negligence"*, 17 Rev. C. Abo. P. R. 21 (1956); Gadea Picó, *La Enmienda al 1802*, 17 Rev. C. Abo. P. R. 49 (1956); Ortiz, *La Negligencia o Causación Comparada*, 17 Rev. C. Abo. P. R. 61 (1956); Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 U. Fla. L. Rev. 135 (1958); Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 464 (1953); Philbrick, *Loss Apportionment in Negligence Cases*, 99 U. Pa. L. Rev. 572, 766 (1951); Turk, *Comparative Negligence on the March*, 28 Chi.-Kent L. Rev. 189, 304 (1950); Malone, *Comparative Negligence—Louisiana's Forgotten Heritage*, 6 La. L. Rev. 125 (1945); Gregory, *Loss Distribution by Comparative Negligence*, 21 Minn. L. Rev. 1 (1936); Lowndes, *Contributory Negligence*, 22 Geo. L. J. 674 (1934); Mole y Wilson, *A Study of Comparative Negligence*, 17 Cornell L. Q. 333, 604 (1932); Prosser, *On Torts* (2ª ed., 1955), págs. 296–299; Harper y James, *The Law of Torts* (1956), vol. 2, § 22.11, págs. 1236–1241; Prosser y Smith, *Torts, Cases and Materials* (3ª ed., 1962), págs. 577–582; Green, *Cases on the Law of Torts* (1957), 543, 592–598.

([7]) En general, véanse, Gregory, *Legislative Loss Distribution in Negligence Actions* (Univ. of Chicago Press, 1936); Pons Jr., *Reparto de los Daños Bajo la Doctrina de Negligencia Comparada*, 19 Rev. C. Abo. P. R. 179 (1959); Estrella, *supra*, págs. 31 *et seq.*

chófer del camión de arrastre es leve, debe desestimarse la acción porque la preponderancia de culpa reside en dichos demandantes. O, que, aceptando la conclusión de derecho de que ambas culpas contribuyeron en igual grado para la ocurrencia del accidente, procede su compensación.

El Profesor Prosser (⁸) alude a la regla sobre negligencia crasa y negligencia leve que aparece en las decisiones de los tribunales del Estado de Illinois a partir del año 1958. En efecto, para atemperar el rigor de la doctrina de negligencia contribuyente que privaba al reclamante de toda indemnización irrespectivamente de su grado de culpa, se elaboró la doctrina de que la negligencia del demandante no derrotaba su derecho a recobrar si ésta era leve, mientras la del demandado era crasa en comparación.(⁹)   No se intentaba distribuir los daños, y el efecto de la aplicación de esta "modalidad" de la negligencia comparativa era permitir que el demandante recobrara la totalidad de los daños por él sufridos.   Sin embargo, los serios inconvenientes prácticos que entrañaba esta regla para la determinación bajo las variadísimas situaciones de hechos en que se invocó aceleraron su desaparición del escenario de la responsabilidad extracontractual.   Malone, *The Formative Era of Contributory Negligence*, 41 Ill. L. Rev. 151 (1946); Green, *Illinois Negligence Law*, 39 Ill. L. Rev. 36, 117, 197 (1944); Mole y Wilson, *A Study of Comparative Negligence*, 17 Cornell L. Q. 333, 604 (1932).   Los estatutos vigentes en Nebraska y Wisconsin expresamente permiten la comparación de faltas para la distribución de los daños: el de Nebraska, alude a la negligencia leve del demandante en comparación con la crasa del demandado (2 Neb. R.R.S. 1943, sec. 25–1151,

---

(⁸) *Selected Topics on the Law of Torts* (University of Michigan Law School, 1953), págs. 30–39; 51 Mich. L. Rev. 465 (1953).

(⁹) *Galena* v. *Chicago Union R. Co.* v. *Jacobs*, 20 Ill. 478 (1858), reportado en Green, *Cases on the Law of Torts* (1957), pág. 543; *City of Chicago* v. *Stearns*, 105 Ill. 554 (1883); *Schmidt* v. *Chicago, etc.*, 83 Ill. 405 (1876), y otros casos citados en los escolios 111 y 112 del mencionado artículo por el Profesor Prosser.

pág. 510) ; *Brackman* v. *Brackman*, 100 N.W.2d 774 (Neb. 1960) ; *Kirchner* v. *Gast*, 100 N.W.2d 65 (Neb. 1959) ; *Bezdek* v. *Patrick*, 94 N.W.2d 482 (Neb. 1959) ; *Fairchild* v. *Sorenson*, 87 N.W.2d 235 (Neb. 1957) ; el de Wisconsin, se refiere a que la negligencia de la parte actora no sea superior a la del demandado (39 W.S.A. 331.045, pág. 341) ; *Van Wie* v. *Hill*, 112 N.W.2d 168 (Wis. 1962) ; *Meyer* v. *Val-Lo-Will Farms, Inc.*, 111 N.W.2d 500 (Wis. 1961) ; *Becker* v. *City of Milwaukee*, 99 N.W.2d 804 (Wis. 1959) ; 1939 Wis. L. Rev. 530; 1939 Wis. L. Rev. 427; 1933 Wis. L. Rev. 530. Independientemente de que la trayectoria de nuestro derecho rechaza esa interpretación,[10] el Art. 1802 del Código Civil no contiene tal limitación, y no podemos injertarla en su texto. Además, habiendo rechazado el planteamiento de los demandados-recurrentes y sostenido la determinación del tribunal de instancia sobre la atribución de responsabilidad por igual a ambos conductores, resulta ociosa toda ulterior discusión.

■ La otra fórmula sugerida por los demandados-recurrentes—fijación de la compensación a base de la proporción de la culpa de uno de los litigantes en comparación con la del otro—tampoco puede sostenerse a la luz de la redacción de nuestra disposición estatutaria que taxativamente señala que la imprudencia concurrente del perjudicado solamente conlleva la *reducción* de la indemnización. Una vez más el concepto de moderación de la responsabilidad a que hemos venido haciendo referencia cobra actualidad. Prosser, *op. cit.*, pág. 45, critica esta fórmula de compensación por su falta de realismo y poca base científica.[11] En Mississippi, en donde la redacción de la disposición sobre negligencia comparativa es sustancialmente igual a la nues-

---

[10] Véase, Art. 1056 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3020, que se refiere a moderación de la responsabilidad; *Ramos* v. *Carlo*, supra.

[11] Esta regla predomina en Wisconsin, pero ha sido objeto de severa crítica. Campbell, *Ten Years of Comparative Negligence*, 1941 Wis. L. Rev. 289; Campbell, *Wisconsin's Comparative Negligence Law*, 7. Wis. L. Rev. 222 (1932).

tra (Miss. Code 1942, § 1454), se ha adoptado la fórmula que utilizó el juez de instancia. *Show* v. *City of Hattiesburg,* 97 So.2d 366 (Miss. 1957); *Wells* v. *Bennett,* 90 So.2d 199 (Miss. 1956); *Cobb* v. *Williams,* 90 So.2d 17 (Miss. 1956); *McClellan* v. *Illinois Cent. R. Co.,* 37 So.2d 738 (Miss. 1948); *Yazoo & M. V. R.* v. *Williams,* 74 So. 835 (1917); *Yazoo & M. V. R.* v. *Carroll,* 60 So. 1013 (1913).

■ A los fines de guiar a los jueces de instancia en su difícil tarea de resolver las numerosas reclamaciones de daños y perjuicios que se tramitan anualmente, indicaremos en forma definitiva que cuando se haya establecido la concurrencia de faltas como causa del daño, la parte demandada deberá reparar aquella parte del perjuicio proporcional a la falta por él cometida. Así, la responsabilidad se fijará en último análisis según la gravedad de las faltas respectivas. Como cuestión de hecho, así lo ha venido haciendo este Tribunal en los pocos casos en que se ha enfrentado al problema: *Viñas* v. *Pueblo Supermarket,* 86 D.P.R. 33 (1962); *Flores* v. *F. & J. M. Carrera, Inc.,* 83 D.P.R. 332 (1961). No se cometió el error señalado.

### III

Después de reducir la cuantía de la indemnización en proporción a la falta atribuida al demandante Flavio Irizarry, el tribunal a quo dictó sentencia a su favor por la suma de $8,200. En otras palabras, valoró los daños totales recibidos por éste en la suma de $16,400, entre los cuales incluyó $800, como pérdida total del vehículo, y $600, de ingresos dejados de percibir en un negocio de ebanistería que explotaba. Un simple cálculo matemático nos indica que estimó los daños por sufrimientos físicos y mentales en la suma de $15,000.

Para el año 1959 el demandante Flavio Irizarry era un joven que contaba 25 años de edad, estudiante y veterano de las fuerzas armadas. Dejemos que el propio tribunal de instancia nos pinte el cuadro patético y conmovedor del resuítado del accidente:

" . . . el demandante Flavio Irizarry recibió serias lesiones internas, habiendo sido dicho demandante internado esa misma noche en el Hospital de la Concepción de San Germán donde permaneció recluido por espacio de 33 días. Dicho demandante sufrió la rotura de un riñón, sufriendo éste además, la fractura de la novena costilla del lado derecho y del transverso derecho de la primera vértebra lumbar, así como una pequeña herida superficial entre las cejas y varias contusiones y laceraciones. El demandante llegó al Hospital de la Concepción semi-inconsciente, en estado de shock, con una hemorragia interna profusa, siendo necesario el practicarle una operación de emergencia esa misma noche para extraerle el riñón afectado, habiendo estado dicho demandante durante las primeras dos semanas de hospitalización bajo los efectos de calmantes sin tener éste conciencia plena de lo que estaba ocurriendo. Durante los primeros días que estuvo hospitalizado el demandante desarrolló una seria complicación de pleuresía y luego se le formó un absceso en la herida de la operación, que había sido necesario dejarle abierta con una mecha, habiendo sido necesario practicarle una segunda operación para extirparle el tumor. Después de ser dado de alta del hospital el demandante Flavio Irizarry tuvo que permanecer por espacio de varios meses acostado en su hogar debido a la condición delicada de salud en que quedó al salir del hospital, y aunque posteriormente éste no ha tenido complicaciones en cuanto al funcionamiento de su restante riñón, es obvio que las funciones y resistencia de sus riñones ha quedado limitada por la pérdida de uno de dichos órganos."

■ Aunque ordinariamente no intervendremos con la discreción del juzgador en la estimación de los daños, creemos que en el presente caso la suma fijada, consideradas todas las circunstancias señaladas, es claramente inadecuada y que debe aumentarse sustancialmente. Fijaremos los daños en $30,000, sujeto a la reducción proporcional que procede en virtud de la concurrencia de culpas.

*En virtud de lo expuesto, se dictará sentencia aumentando a $15,700 la compensación concedida a Flavio Irizarry Rodríguez, y así modificada, se confirmará la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, en 26 de agosto de 1960.*